## J. S. WHITE v. THE STATE.

No. 2952.  Decided February 24, 1904.

**1.—Jury and Jury Law—Judge's Duty to Appoint Jury Commissioners.**

Our laws on the subject of selecting jurors has placed this matter in the hands of the jury commissioners selected in the first instance by the judges of the courts for the purpose of maintaining the purity and efficiency of our jury system, and it is beyond the power of a judge to purposely and intentionally ignore the right of one accused of crime to a speedy public trial by an impartial jury, by intentionally refusing to appoint jury commissioners to select jurors according to the provisions of the statutes. Distinguishing Sanchez v. State, 39 Texas Crim. Rep., 389.

**2.—Same—Challenge to the Array—Practice.**

While the statute apparently fails to designate the mode by which appellant could invoke the right to challenge the array, this court will adopt some rule of practice for the exercise of a right guaranteed him by law, to safeguard him in the exercise of such right.

**3.—Same—Expediency Not Considered.**

The judge can not base his refusal to appoint jury commissioners on the ground of saving expense to the county, etc., as the right of trial by jury stands upon a higher plane than expediency; and fair trial by jury means a jury selected according to the law regulating their selection and impanelment.

**4.—Local Option—When Other Sales May Be Shown.**

When defendant claims to have sold wine for sacramental purposes and that he was deceived in the instance for which he is accused of selling contrary to law, the State may be permitted to show other sales, when the testimony shows that defendant was in the habit of selling wine to boys for sacramental purposes and taking from them a certificate to that effect, as his defense of good faith would be impaired.

Appeal from the County Court of Parker. Tried below before Hon. D. M. Alexander.

Appeal from a conviction for violating the local option law; penalty, a fine of $50, and confinement in the county jail for twenty days.

The opinion states the case.

*R. B. Hood* and *Sam Shadle,* for appellant, on motion to quash venire, cited: Sayles' Civ. Stats., art. 3155, p. 1168; Sayles' Civ. Stats., art. 3157, p. 1169; Sayles' Civ. Stats., art. 3158, p. 1169; Elkins v. State, 1 Texas Crim. App., 539; Shackleford v. State, 2 Texas Crim. App., 385; O'Bryan v. State, 12 Texas Crim. App., 118; Constitution of Texas, art. 1, sec. 15.

*Howard Martin,* Assistant Attorney-General, and *James C. Wilson,* county attorney, for the State.—There is no claim even in the motion nor in the testimony of corruption, unfairness, possible injury, or prejudice to defendant; simply and solely because the jury was not chosen by the commissioners. This requirement is not mandatory. Sanchez v. State, 39 Texas Crim. Rep., 389; Anderson v. State, 34 Texas Crim. Rep., 96; Whittle v. State, 43 Texas Crim. Rep., 468; Thompson v. State, 44 S. W. Rep., 837.

HENDERSON, Judge.—Appellant was convicted of violating the local option law, and his punishment assessed at a fine of $50 and twenty days confinement in the county jail; hence this appeal.

Appellant made a motion to quash the venire on the ground that said jurors had not been chosen and selected by a jury commission of Parker County, as the law directs; but that the judge had intentionally and purposely failed to appoint a jury commission to select jurors, not only for the present term of the court, but for many previous terms; that said action on the part of the judge was not accidental or through inadvertence or mistake, but was purposely done in order to place the selection of the jury entirely in the hands of the sheriff, his deputies and the constable, whose fees and costs depend entirely upon a conviction in misdemeanor cases. That the jury furnished him was not the jury authorized by law. It seems that the court tried this issue and heard testimony thereon. J. E. Hodges testified, that he had been county clerk of Parker County for three years next preceding the present term of the court. At the last term of the County Court of Parker County no jury commissioners were appointed to select jurors for the present term; that he had examined the records and found that no jury commissioners had been appointed or chosen for several terms preceding the present term of the

county court; that he was sure it has been as many as four terms, including the present term, in which no jury commissioners had been appointed or chosen. D. M. Alexander testified: "I am county judge of Parker County and have been for three years; am serving my second term. At the last term of the county court I did not select jury commissioners to select jurors for the present term of the county court. I have not appointed jury commissioners for several terms next preceding this term. I can not say just how many, but three or four anyway. It was not through mistake, accident or inadvertence that I did not appoint jury commissioners. My failure to appoint commissioners was intentionally and purposely done. I knew they were not appointed. By experience I had found that juries selected by jury commissioners would not attend court, frequently because the docket was usually light, and often did not require them but one or two days; therefore it saved money to the county not to appoint jury commissioners and let the sheriff summon the jury. Usually about half the jury had to be summoned by the sheriff anyway."

Bratton testified that he was sheriff of Parker County and had been for three years; did not summon more than one or two men on the venire for this week. Doggett, constable of this precinct, summoned the jury. Doggett is not a deputy sheriff of this county. The sheriff stated that Doggett was his jailer and lives in the jail.

R. B. Hood, attorney for the defendant, testified "that he was county attorney of Parker County at the term before the present one, but never knew jurors to be selected as these were selected but one time; and after court adjourned on that occasion, he asked Judge Alexander why he did not appoint jury commissioners, and if the judge or anyone else wants to know what the reasons were he gave, I will state what he told me. The county attorney here asked Mr. Hood, 'Do you claim that the right of your client J. S. White will be in any way injured by his being forced to trial by a jury selected from the venire this day chosen, or that this trial would be an unfair one to his client?" To which Mr. Hood answered, 'No, I make no such claim. I just say that this manner of selecting a jury is illegal and that this venire, on account of the manner of its selection, should be quashed.' "

The court after hearing the motion to quash overruled the same, and defendant excepted.

The State contends that this question cannot be reached by a motion, such as this, which is in the nature of a motion to quash the array; that said motion was not sworn to, etc. That appellant was only guaranteed by the Constitution a fair jury, and he admits that he had such jury; and therefore the court did not err in refusing to sustain the motion to quash. As we understand articles 661 and 696, Code of Criminal Procedure, a defendant may challenge the array for the following causes only: that the officer summoning the jury has acted corruptly and has willfully summoned persons upon the jury known to be prejudiced against

defendant with the view of causing him to be convicted. The right to challenge the array does not apply where a jury has been selected by jury commissioners. Art. 662, Code Crim. Proc; Whittle v. State, 4 Texas Ct. Rep., 237. So it would appear that if appellant has any right of challenge to the jury here, he could not exercise it as a right of challenge to the array; and if he has such right he must look for a mode of procedure somewhere else. We do not believe that because the statute fails to designate the mode by which he can invoke the right this should deprive him of his privilege to question the jury; although our Code of Criminal Procedure provides in a number of instances how rights can be exercised, yet we do not understand that because no special mode is provided, that the court can not adopt some rule for the exercise of a right where it is guaranteed by law. For instance, we entertain a motion to quash the grand or petit juries where there has been race discrimination in the formation of such juries. And again, although the statute does not point out a mode by which special venires, where not drawn or summoned according to law, can be set aside, yet we have adopted a rule of practice by which this right can be exercised. So, we hold if appellant has a right to be tried by a jury, drawn by commissioners, and this right is denied him by the trial court, we will adopt a rule that will safeguard him in the exercise of the right. However, the State insists that article 695, Code of Criminal Procedure, is authority for holding that appellant is not entitled to a jury drawn by jury commissioners, inasmuch as said article provides, "When from any cause there are no regular jurors for the week from whom to select the jury, the court shall order the sheriff to summon forthwith such number of qualified persons as it may deem sufficient; and from those summoned a jury shall be formed as provided in the preceding articles of this chapter." And we are referred to Sanchez v. State, 39 Texas Crim. Rep., 389, for an interpretation of this article. That was not a case in which the court intentionally disregarded the law with reference to the selection and impanelment of jury commissioners, but for aught that appears was a case where the failure to select a jury by the commissioners occured by accident, or from some cause the jury selected by the jury commissioners had been previously discharged by the court. There we held that, inasmuch as the statute stated, "where from any cause there has been a failure of the jury commissioners to provide a jury for the term or a part of the term," the judge could order the sheriff to summon a jury for such term or part of the term; and that the statute in this regard did not appear to be mandatory. But here we are for the first time confronted with the proposition whether a county judge can intentionally ignore the provisions of law with reference to the appointment of jury commissioners for the selection and drawing of jurors for the terms of the county court. Rev. Civ. Stats., arts. 3155 to 3173, inclusive. Section 10, article 1, of our Bill of Rights provides that in all criminal prosecutions the accused shall have a speedy public trial by an impartial jury, etc. Section 15 provides the right of trial by jury shall remain inviolate. The Legis-

lature shall pass such laws as may be needed to regulate the same and to maintain its purity and efficiency.

In pursuance of these provisions, the Legislature has passed such laws for the purpose of insuring the purity and efficiency of jurors. It is well known that for a long time in this State there was complaint in regard to the system then in vogue by which jurors were selected and summoned in the first instance by sheriffs and their deputies and by constables. Our laws on the subject with reference to placing this matter in the hands of the jury commissioners selected in the first instance by the judges of the court was undoubtedly enacted for the purpose of maintaining the purity and efficiency of our jury system. If a judge can purposely ignore this right by intentionally refusing to appoint jury commissioners, he can in effect nullify the Constitution and the provisions enacted thereunder to guarantee the purity and efficiency of our jury system. If he can refuse to appoint jury commissioners in one instance, he can do so altogether, and thus abolish the provisions of the statute with reference to the appointment of jury commissioners. We can not consent that the judge should thus set aside the plain provisions of our statutory law on this subject. The enabling statute with reference to the selection of juries by the sheriff, deputies and constables, where from any cause the jury commissioners have failed to select jurors, or even where from any cause the court has failed to appoint jury commissioners, must evidently refer to some accidental oversight or omission of this duty; and not to some intentional disregard of the statute, even though this disregard may be based on the desire of the judge to save some expense to the county, or because jurors were not in the habit of attending court, or even though he might-believe his method of selecting jurors would be a better method, in that better material for jury service might thereby be selected. The right of trial by jury stands upon a higher plane than expediency; and fair trial by jury means a jury selected according to the law regulating their selection and impanelment. We therefore hold that appellant was denied, by the intentional action of the judge, of the right of trial by a legal jury.

In view of another trial, if the evidence presents itself in the same condition as that now before us, we hold it would be competent for the State to introduce evidence of other sales, in order to illustrate appellant's method of selling wine. He claims to have sold the wine in question for sacramental purposes. Defendant might claim, as it appears he did, that he was deceived in this one instance; but when it was shown that he was in the habit of selling wine to boys for sacramental purposes and taking a certificate from them to that effect, his defense of good faith would suffer serious impairment.

It is not necessary to notice other assignments. On account of the refusal of the court to quash the jury which was selected in violation of law, the judgment is reversed and the cause remanded.

*Reversed and remanded.*