**CITY OF SAN AUGUSTINE, Appellant,**

v.

**J. E. JOHNSON, Appellee.**

No. 6300.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 15, 1961.

Rehearing Denied Sept. 27, 1961.

Ramsey & Ramsey, San Augustine, for appellant.

Leonard E. Choate, Beaumont, J. L. Smith, San Augustine, for appellee.

McNEILL, Justice.

The action was by appellant, City of San Augustine, against appellee J. E. Johnson to condemn a tract of 40.8 acres out of a tract of 61 acres owned by appellee, to be used by the city as part of a reservoir for city water supply. The city sought the fee in the land, save and except the mineral interest. Six special issues were submitted to a jury by the trial judge, and upon the answers thereto finding damages in the sum of $8,350, judgment was rendered in behalf of appellee for that sum, less the amount that had been deposited in the registry of the court upon the commissioners' award, and this appeal has resulted.

Appellant's brief contains four points of error. The first asserts the trial court erred in overruling its motion to quash the jury panel. As grounds for said motion appellant alleged:

"That the jury commissioners who drew the jury by which this cause will be tried were not sworn by the County Judge to perform their duty as jury commissioners of the County Court, and by reason of not being sworn the jury selected by said jury commissioners is an illegal jury.

"That the petit jury selected to sit in the trial of cases for the week of November 17, 1958, was irregular and illegally chosen for the reason that the County Judge did not administer to the Clerk of this Court and each of his deputies the oath as prescribed by law and by Article 2113, Revised Civil Statutes of the State of Texas, of 1925, as amended."

█ The case was called for trial on November 17, 1958 and upon presentation of the motion, witnesses were called in its support. It was shown that Cecil Murphy, the County Clerk, actually administered the oath required by Art. 2109, R.S.1925, to the three jury commissioners who prepared the jury list for the week the present case was tried, and that this had been the practice for two or more years. However, it was also shown that the County Judge, Hon. I. E. Mason, who held that office since 1955, was totally blind and had not memorized the oath; that on November 5, 1958, the occasion for administering the oath to the commissioners, as he had done several times previously, he called on the County Clerk to give the oath to the commissioners; and this was done in the presence of and under the direction of Judge Mason. We hold under these facts that the physical act of giving the oath by the clerk was in law the act of the County Judge himself and consequently the oath was properly administered to the commissioners under Art. 2109, R.S.1925.

█ It was also shown, on the motion, that when he delivered the jury envelopes containing the jury lists to the County Clerk, the County Judge failed to administer to the clerk and his deputies the oath required in Art. 2113, R.S.1925. This had been done several times in the past but the clerk stated to the best of his memory, it was not done this time. This point has given us concern; but since the failure to administer the oath was an oversight of the officials and not an intentional or arbitrary disregard of the statute, as condemned by the Court of Criminal Appeals in White v. State, 45 Tex.Cr.R. 597, 78 S.W. 1066, Clark v. State, 138 Tex.Cr.R. 107, 134 S.W.2d 676 and Logan v. State, 154 Tex.Cr.R. 164, 226 S.W.2d 121, and since there was no showing the clerk had not kept the envelopes in a safe and secure place, as required by Art. 2112 as amended in 1943, and no harm or prejudice to appellant was shown, we have concluded that the failure of the court to sustain the motion for failure to give the clerk and his deputies the oath was not reversible error. Appellant has relied strongly upon the opinion of the court in Heflin v. Wilson, Tex. Civ.App., 297 S.W.2d 864 (W.R.) to sustain its motion to quash the panel. The situations are different. There, the trial court, under an unconstitutional law, had used the jury commission method of obtaining a jury instead of the jury wheel system. In that instance the entire system of jury selection was void, while the present case reveals only the oversight of one step or link in the chain of proceedings under the proper law.

Appellant's second point is to the effect that since, in its petition to condemn the 40.8 acres, all oil, gas and other minerals were expressly excluded from the condemnation, it was error for the court in refusing to limit the jury's consideration to the value of the surface estate. Special Issue No. 1 so complained of was:

"What do you find, from a preponderance of the evidence, was the market value of the 40.8 acres of land con-

demned by the City of San Augustine, considered as severed land?"

■ The evidence fails to indicate what minerals, if any, were in the land. However, there was testimony by one of appellant's witnesses, to the effect that the mineral estate under lands of unknown content in the county were worth $10 per acre. The present condemnation was for the surface of the land, all of which will be covered, at least part of the time, by the water reservoir for appellant's water supply. In the very nature of its use, therefore, appellant's title is comparable to, if not, a dominant estate, and the purity and protection of the water impounded for use of the city's inhabitants is the first consideration. 30 C.J.S. Eminent Domain § 421, p. 213. The "taking" by the city is permanent. In these circumstances, appellee argues that the taking is practically of the entire title, that the use of the surface by the city will destroy the value of the mineral estate, and he cites in support Thompson v. Janes, 151 Tex. 495, 251 S.W.2d 953. There Thompson, as receiver of the I. & G. N. R. R. Company, sought to condemn land in the City of Austin for a depot site and other related purposes. Since under Art. 6339, R.S.1925, a railroad company may not take fee title to land in condemnation proceedings, and the trial court's charge inquired of the market value of the land, the receiver complained of failure of the court to define the term "market value" used in the issues as being the market value of an "easement" for railroad purposes, the interest described in the petition. In declining to sustain the receiver's position, the Court, writing through C. J. Hickman, quoted from 18 Amer.Jur. Sec. 251. The Court's opinion said (251 S.W.2d at page 956), "* * * that the exercise of the right (by the railroad) will require practically the exclusive use of the surface; and that any interest which might be reserved to the owner in the fee would only be a nominal one and of no value." It should be borne in mind, however, that in the quoted case it was shown that the value of the

easement equalled the value of the land and no question of the value of any minerals in the land was raised as was done in the present record. It was also shown in the trial of the present case that directional drilling for oil and gas under the 40.8 acres taken may be conducted. It was not indicated whether directional drilling would be as effective as if conducted on the tract condemned. However, there is no question but that the mineral estate, since appellee still owns the balance of the 61 acre tract, also has value to him. Calvert v. Harris County, Tex.Civ.App., 46 S.W.2d 375 (W.R.); Boothe v. McLean, Tex.Civ.App., 267 S.W.2d 158(167) (reversed on another point, 154 Tex. 272, 276 S.W.2d 777), 156 A.L.R. 1416. The trial court should have, therefore, limited his definition of "market value" of the land to the surface estate as appellant's objection indicated. However, this error may be eliminated if appellee will file a remittitur, as hereinafter provided, of $10 per acre, the value placed upon the mineral estate by appellant's witness.

Special Issues Nos. two and three are:

### Special Issue No. 2

"What do you find, from a preponderance of the evidence, was the market value of defendant's land and improvements exclusive of the 40.8 acres condemned, immediately before the 40.8 acres was taken by the City of San Augustine? * * *"

### Special Issue No. 3

"What do you find, from a preponderance of the evidence, was the market value of the remainder of defendant's land and improvements immediately after the taking of the 40.8 acres condemned?"

Objection was made to these issues by appellant, carried forward as its third point, that including the use of the word "improvements" in the issues as a distinct item from the land of which they are a part

resulted in confusing and misleading the jury into assessing double damages. The expression, "land and improvements," we think, was used by the trial court to keep the jury from overlooking the value of the improvements as a part of the land—the part taken having no improvements except fences. The phrase "land and improvements" is a general term describing land; while the use of the word "land" alone ordinarily includes the improvements thereon, when witnesses testify to values separately of land without improvements, and then place value on improvements involved, as in this case, a jury of laymen could be confused as to what the court meant by use of the word "land" alone. Appellant was not harmed by the use of the phrase "land and improvements".

■ Appellant's last point asserts that the court erred in submitting to the jury Issue No. 4 inquiring whether appellant's business was temporarily interrupted as a result of the construction of the dam and lake, and to Issue No. 5 (submitted conditionally on "yes" answer to Issue 4), inquiring whether he sustained any damages by such interruption, and to Issue 6 (submitted conditionally) inquiring the amount of any such damages; the contention being that such interruption is an element to be considered in the difference between the market value of that part of the land not take before and after the taking. Appellant cites Milan County v. Akers, Tex.Civ.App., 181 S.W.2d 719, as sustaining its point. The case does not control the present one. There, it was not the temporary interruption of the cattle business complained of but the permanent decrease in value of the part of the land not taken for cattle raising which was properly considered as affecting the market value of the place. The submission of the issues is sustained by City of LaGrange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243.

Unless appellee, within two weeks after this opinion is filed with the Clerk, files a remittitur of $408 representing the only value placed upon the mineral estate in the record, as credit upon the judgment below, this case will be reversed and remanded for a new trial; if the remittitur is filed with the Clerk of this court within said time, the judgment will be affirmed for the balance.

Affirmed conditionally.

Remittiturs having been filed this September 15, 1961, as suggested, our conditional affirmance is hereby adjudged to be final.