STATE of Texas et al., Appellants,

v.

Rudolph ZARUBA et ux., Appellees.

No. 6828.

Court of Civil Appeals of Texas.
Beaumont.

Sept. 8, 1966.

Rehearing Denied Oct. 12, 1966.

Woodrow Curtis, Asst. Atty. Gen., Austin, for appellant.

Zbranek & Friend, Liberty, for appellee.

STEPHENSON, Justice.

This is an eminent domain case and involves a partial taking of land for the purpose of widening an existing highway. Judgment was rendered upon a jury verdict and the State appealed.

Issues were submitted to the jury concerning the value of the land taken, and the value of the remainder before and after the taking. No complaint is made as to the finding by the jury as to the value of the land taken. All of the errors complained of concern the remainder. The strip of land taken was 5 feet in width across the front of Zaruba's tract which was 100 feet by 100 feet in size. The evidence shows that Zaruba had constructed an odd shaped building upon these premises using a part as a drive-in grocery store, a part as a bar and the remaining portion for living quarters. The portion of the building used as a bar extended forward more than that used for the grocery store. The living quarters were located at the rear of the building. The barroom was located three feet from the right-of-way line before the taking so when the 5 feet was taken, the right-of-way line cut off 2 feet of the barroom. The portion of the building used as a grocery store was located 9 feet from the right-of-way before the taking, leaving only 4 feet after the taking. The evidence also showed that for many years the customers of Zaruba's store and bar parked their cars perpendicular to the building and such cars extended out into the old right-of-way.

The first series of points raised by the State involve the question as to whether Zaruba was entitled to offer evidence as to the cost of tearing down the building and reconstructing it on another part of the remainder further back from the right-of-way. The State contends that Zaruba's customers had been using the right-of-way for parking, that access was not being denied to him, and that he was not entitled to recover damages for the loss of an operation which could not have been carried on without the use of such right-of-way. Zaruba contends that he could have carried on his businesses even if he had been prevented from using the right-of-way for parking before the 5 feet were taken. He argues that he could have removed the portion of the bar extending beyond the grocery store and provided parallel parking for his customers. That after the taking, if he could no longer use the right-of-way for parking, it would be impossible to provide any parking on his property remaining and that the building would then have to be torn down and rebuilt.

The witness, Potetz, was permitted to give evidence as to the cost of tearing down the building and reconstructing it further back on the property, primarily with new material. We have concluded that this evidence was admissible and the jury was entitled to give it consideration in arriving at the market value of the remainder after the taking. The general rules concerning the admissibility of evidence in an eminent domain case were set out by the Supreme Court of Texas in State v. Carpenter, 126 Tex. 604, 89 S.W. 2d 194 at page 199, as follows:

" 'The market value of property includes its value for any use to which it may be put. If, for reasons of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all of the circumstances which make up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating the compensation. * * *'

" '* * * The fact that the road necessitated additional fencing and establishment of an additional watering place in order to restore the land to its former usefulness and value for the purpose for which it was used by the owner was evidence of a depreciated value. The cost of additional fencing, establishing water

places, and other items of like nature necessitated by the laying of the road do not constitute a measure of damage and are not recoverable as distinct items of damage, but evidence of this nature is admissible, and is entitled to be accorded its proper probative force in determining whether the tract of land as a whole has been damaged. * * *'

"* * * In arriving at this second item of damage, (depreciation in value to the remainder) the parties would have the right to introduce evidence of everything that would tend to affect the value of the land, in the estimation of a proposed purchaser, or that would tend to make it more or less valuable to the present owner, such as the shape in which the tract will be left; the increased amount of fencing, if any, that will be required; the increased expenditure made necessary to provide water; the added facilities, if any, provided for tract to the owner of the land. * * *

"The matters of proof touching value as well as damages are so varied and multitudinous that only general rules can be formulated. * * * Generally, it may be said that it is proper as touching the matter of the value and depreciation in value to admit evidence upon all such matters as suitability and adaptability, surroundings, conditions before and after, and all circumstances which tend to increase or diminish the present market value. * * *"

The taking of a parking lot was involved in the case of City of Dallas v. Priolo, 150 Tex. 423, 242 S.W.2d 176. The witness, Wolf, was permitted to testify as to the loss of business because of the loss of parking space and the court had this to say about such testimony:

"* * * To establish the amount of his damages Priolo placed upon the witness stand *Arthur Wolf*, a real estate dealer with much experience in apprais-

ing Dallas property. The witness testified that he was familiar with Priolo's property, with the neighborhood in which it is located, and with the volume of business done by Priolo. He was then permitted to state his opinion as to the value of the strip taken and the lessened value of the land and the building not taken. Questioned by Priolo's attorney as to the factors which went into the values testified to by him, he stated that there were several factors, among them being the number of people living within the vicinity of the business, the parking facilities, the uses to which the property can be put, and the income therefrom. He testified that the highest and best use for Priolo's property was that for which it was presently being used. At considerable length he testified as to the value of parking space; that his estimate of value was based, in part, on figures given him by Priolo that 50 percent. of the customers came in cars, and that there would be a 50 percent. or greater loss of these customers; that future loss of business as a result of the loss of parking space was one element in his valuation; that the amount of business has considerable bearing on the valuation; that the amount of business has considerable bearing on the rent that a tenant would pay, and that rental value is an element in fixing market values; *that the income was a basis for valuation; and that the theory of replacement value and depreciation would result in the same figures, since it would become necessary to depreciate the value of the remaining land and building a great deal more because the land and building would sell for less with no parking space in front. In effect, this witness, who was called by Priolo, testified that the lessened market value of the portion of the lot not taken was due to a falling off of Priolo's business.*

"* * * It was held in that case, [Milam County v. Akers, Tex.Civ.App.,

181 S.W.2d 719] and we approved the holding by our refusal of an application for writ of error therein, that *where the ownership of land, improvements and business conducted thereon are in the same person evidence of resulting injury to the business is admissible, not as a separate item of damage, but as affecting the market value of the remaining land and improvements for the uses to which they were adapted and were being put.* That was the theory upon which the testimony of the witness *Wolf* was admissible." (Emphasis added)

It was proper for Zaruba to offer evidence to show the cost of moving and reconstructing the improvements because of the loss of the space which could have been used as parking. Such evidence was admissible, not to prove separate items of damages, but as affecting the market value of the remainder of the land and the improvements and the uses for which they were adapted and were being used.

The State next contends it was error on the part of the trial court in refusing to strike the value testimony given by Zaruba. No information is given to this court as to where in the statement of facts such a motion to strike was ever made, presented and refused. Zaruba denies such a motion was made. We do not find that the State ever objected to the value testimony given by Zaruba, nor that any motion to strike such testimony was made. The point is overruled.

■ The trial court permitted Zaruba to give evidence as to the amount of profit that he would lose during a four month period of time. The witness Potetz had testified that 120 days would be required to tear down and reconstruct the improvements. Under the authority stated above, City of Dallas v. Priolo, supra, such evidence was admissible. The point is overruled.

The State next complains of the trial court's action in permitting the witness Po-

tetz to testify to the cost of tearing down and reproducing the same improvements with new material at a different location on Zaruba's land. The record shows that the objection to this testimony was on the ground that it involved future intended usage of the property. The State's motion to strike such testimony again states that the basis of such objection is that the testimony shows a future intended use and further that it is strictly a replacement cost and not a damage. No mention is made either in the original objection or the motion to strike that such testimony included the cost of new material in reconstructing the improvements. It is noted that this evidence was not offered to prove the value of improvements being taken in a condemnation proceeding, but for the purpose of showing the cost of moving the improvements to a different location. We do not consider this as being objectionable on the ground that it shows a future intended use, but consider it as evidence of the damage suffered by Zaruba in order for him to continue to use the property in the same manner as at the time of the institution of the condemnation proceedings. The point is overruled.

■ In connection with special issue No. 3, which inquired as to the value of the remainder after the taking, the trial court instructed the jury that it could consider the effects, if any, that the condemnation will have upon the improvements located on the remainder. We do not consider this instruction as a comment on the weight of the evidence nor as calling for double damages. We find nothing improper about the instruction and overrule this point.

■ The State's last series of points were that there was no evidence to support the findings of the jury as to the value of the remainder both before and after the taking, and that the evidence was insufficient to support such findings. In passing

upon the "no evidence" points we consider only the evidence favorable to such jury findings. The jury found the value of the remainder before the taking to be $30,000.-00 and after the taking to be $16,000.00. Zaruba testified: That his property was worth $40,000.00 considering the land, improvements and business. That this was divided $10,000.00 for the residence and $30,000.00 for the business. That after the taking the business would not be worth anything. That the value of the land taken was $500.00. On cross-examination Zaruba testified: The market value of all of his land and improvements was $40,000.00 with the residence at $10,000.00 and the business at $30,000.00. The value of the land separately was $3,500.00. Taking the $3,500.00 from $40,000.00 would leave $36,-500.00 for the residence and business improvements. The residence was worth $10,000.00, leaving $26,500.00 as the value of all improvements except the residence. The witness McConnell testified the value of the premises after the taking would be $14,575.00. The witness Hogue testified the value of the premises after the taking would be $14,500.00. The values found by the jury were within the limits as testified to by these witnesses. The value of the remainder before the taking, as found by the jury, was less than that testified to by Zaruba. The value of the remainder after the taking was more than that testified to by the witnesses McConnell and Hogue. The jury could accept part of the testimony of one witness and part of the testimony of the other witnesses. Coastal Transmission Corp. v. Lennox, Tex.Civ.App., 331 S.W.2d 778. The points are overruled.

In passing upon the "insufficiency of the evidence" points we consider the entire record. We do not find the answers of the jury to these issues to be so contrary to the evidence as to be manifestly unjust or clearly wrong. The points are overruled.

Affirmed.