The STATE of Texas, Petitioner,

v.

Rudolph ZARUBA et al., Respondents.

No. A–11765.

Supreme Court of Texas.

July 26, 1967.

Rehearing Denied Oct. 4, 1967.

Crawford C. Martin, Atty. Gen., Woodrow Curtis, Asst. Atty. Gen., Austin, for petitioner.

Zbranek & Friend, J. C. Zbranek, Liberty, for respondents.

HAMILTON, Justice.

This is a condemnation case. The State took an easement over a strip of land five feet in width across the front of Zaruba's property. The trial court entered judgment for respondents on a jury verdict for $14,500. The Court of Civil Appeals affirmed. 406 S.W.2d 765.

Zaruba's tract of land was 100 feet by 100 feet in size. His residence was located toward the rear of the property. That portion fronting on State Highway No. 321 contained a small food market, a tavern and a storage garage, all contiguous to each other and using almost the entire frontage. These buildings were so situated that the market was nine feet and the tavern was three feet from the existing highway right of way. The garage was placed on an angle at one end of the property. A sidewalk extended some four feet from the food market toward the edge of the right of way. With the buildings so situated Zaruba's customers were able to park their automobiles perpendicular to the highway by using a portion of Zaruba's land and a portion of the highway right of way.

Before the taking of the five foot strip, had the State prevented Zaruba's customers from parking on the highway right of way, Zaruba could have provided a space nine feet wide for his customers to park parallel with the highway by cutting the tavern back even with the market and tearing out the sidewalk. The five foot strip taken includes about two feet off the front of the tavern and about four inches off the sidewalk in front of the market. It is evident that if the State should prevent Zaruba's customers from parking on the enlarged right of way there would be no room to provide parallel parking. That circumstance is the genesis of this controversy.

At the trial the jury found that the market value of the easement condemned by the State was $500; that the market value of Zaruba's tract of land, exclusive of the strip taken, immediately before the taking was $30,000, and that the market value of the remainder immediately after the taking was $16,000. Accordingly, the trial court awarded the State title to an easement across the five foot strip, title to all improvements situated thereon, and awarded respondents damages in the amount of $14,500.

The Court of Civil Appeals held that evidence showing the cost of moving and reconstructing the tavern, storage garage and market because of the loss of the space which could have been used as parking was admissible as affecting the market value of the remainder of the land and improvements and the uses for which they were adapted and were being used. That Court also overruled the State's conten-

tions that there was no evidence to support the jury's verdict on the value of the remainder before and after the taking, and that these answers were so contrary to the evidence as to be manifestly unjust or clearly wrong.

Petitioner's points of error before this Court assert that there is no evidence to support the answers of the jury regarding the market value of the remainder before and after the taking, and that the testimony regarding the cost to reconstruct the buildings was not evidence of compensable damages.

Petitioner contends among other things that there is no evidence to support the answer of the jury that the market value of the remainder before the taking was $30,000. The only testimony which could possibly support this finding comes from Zaruba himself. He testified that he had lived in the area for 54 years, all of his life, and that he was familiar with the value of land and business property in that area. He was asked:

"Q. Based upon your knowledge of land values in the community, do you have an opinion on what your property is worth, and consider in this opinion your land and your improvements *and your business.*

"A. I say $40,000.00.

"Q. All right, sir. Now, how would you divide that with respect to your residence and your business?

"A. Well, I say the house is $10,000.00 and the business is [$30,000.00]."

Zaruba then testified that after the five foot strip was taken off his property, *"for the business* it won't be worth nothing," because "nobody won't be able to park." He further stated that in his opinion the value of the five foot strip taken was $500.

On cross examination the following testimony was elicited:

"Q. I believe you stated that in your opinion the market value of all of your land and improvements on December 18, 1964, was $40,000.00.

"A. Yes, sir.

\* \* \* \* \* \*

"Q. So you figure $3500.00 then would be the value of the land out of the $40,000.00. So that would be $36,500.00 \* \* \* then for the residence and the business improvements, and I believe you stated that in your opinion the residence was worth $10,000.00.

"A. Yes.

"Q. So the residence deducted from that would leave $26,500.00. That is your testimony on the value of all improvements except your residence.

"A. Yes.

" \* \* \*

"Q. \* \* \* How did you arrive at the total of $26,500.00?

"A. We just judge according to what it was valued to us or anybody else if they wanted to buy it, that is what it would be worth. *The business, 20 years service there, it is kind of hard to break that in pieces.* I couldn't explain it to you. *I have to look back 20 years of hard labor.*

"Q. Could you give me your best estimate of about what the store would be and about how much the tavern would be, what part of the $26,500.00 would the store be and which part would the tavern be?

"A. I couldn't answer that.

"Q. In other words, you don't know how you arrived at the $26,500.00, is that it?

"A. I couldn't say it over all. Over all we know what it is worth but I couldn't break it up in pieces like

that. It is kind of hard. For little odds and ends you can say but *when it gets in the business like that,* that is kind of hard to do.

"Q. Is this figure of the improvements of $26,500.00, did you figure that as what it is worth to you? Is that the basis you used for figuring that?

"A. That's right. To somebody else it probably ain't worth $10,000.00 and to the next one it would be worth $50,000.00 and to us it is worth $30,000.00, *the business.* The next one probably wouldn't have it.

"Q. That is what it is worth to you and Mrs. Zaruba?

"A. That is where I started when I fell out of a derrick, from scratch, trying to make a living."

Zaruba further called a building contractor as a witness who testified that it would be impossible to move the store, tavern and storage garage back without first tearing them down. He testified that it would cost $14,193.00 to tear the improvements down, move them back and reconstruct them. The contractor's estimate included the utilization of new building materials.

Zaruba contends that the foregoing evidence will support the jury finding that the value of the remainder of his property before the taking was $30,000.00, because $40,000.00 less $500.00 is $39,500.00, of which $30,000.00 was "for the business" which had no value after the strip was taken, but which could be restored to its full utility for something over $14,000.00.

We disagree. The finding of the jury must be upheld if there is in the record before us evidence of probative value which, with the reasonable inferences therefrom, will support it. We may consider only that evidence, if any, which, viewed in its most favorable light, supports the finding, and we must disregard all evidence which would lead to a contrary result. Biggers v. Continental Bus System, 157

Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359 (1957).

Both petitioner and respondent treat the taking of the five foot easement the same as a taking of the entire fee, at least as far as market value is concerned. Even so, the fact that Zaruba testified in effect, that in his opinion the remaining property was worth $39,500.00 before the taking will not necessarily support the jury finding. In Texas Electric Service Company v. Linebery, 162 Tex. 570, 349 S.W.2d 105 (1961) this Court held that testimony of a witness as to the value of the land taken and the before and after value of the remainder of the tract would not support the jury findings when his opinion was based upon the amount of income received from the sale of right of way over the premises for the construction of roads, pipe lines, overhead easements, the sale of water, and the sale of caliche:

"Such testimony at best constituted an attempt to treat the sale of easements and the like as something in the nature of rents and then capitalize such income (highly uncertain in this case) and arrive at an estimate of market value. Such testimony does not support an opinion of market value." 349 S.W.2d at 106.

Zaruba's testimony will not support the $30,000.00 finding upon the same analysis. When land occupied for business purposes is taken by eminent domain, the damage to the established business or what is called "good will" is not compensable as a separate and independent item of recovery. City of Dallas v. Priolo, 150 Tex. 423, 242 S.W.2d 176 (1951). We conclude from Zaruba's testimony that he included the value of his business as a "going concern" or "good will" in valuing the whole of his property before the taking. This is evident from the fact that his valuation of "the business" at $30,000.00 is some $15,000.00 higher than the cost to rebuild anew, and his valuation at $26,500.00 is some $12,000.00 higher than

the same cost. His testimony is replete with references, emphasized in the testimony quoted above, to his business as a separate entity. Since his opinion was founded on an improper measure of valuation it is of no probative force, and, as in the *Linebery* case, supra, it will not support the jury finding.

In City of Dallas v. Priolo, supra, we held that where the ownership of land, improvements and business conducted thereon are in the same person, evidence of resulting injury to the business is admissible, not as a separate item of damage, but as affecting the market value of the remaining land and improvements for the uses to which they were adapted and were being made. *Priolo* involved the taking of parking facilities from business property. Testimony of market value based in part upon future loss of business as a result of the loss of parking space was held to be admissible. However, the witness testified further that the amount of business has considerable bearing on the rent that a tenant would pay, and that rental value is an element in fixing market values; that the income was a basis for valuation; and that the theory of replacement value and depreciation would result in the same figures, since it would become necessary to depreciate the value of the remaining land and building a great deal more because the land and building would sell for less with no parking space in front.

Here the value of the business improvements completely reconstructed with new material, together with the value of the entire parcel of land is $17,693.00, according to Zaruba and his expert witness. Since Zaruba's opinion that his "business" is worth either $30,000.00 including the land, or $26,500.00 without, bears such an unreasonable relation to the value ascribed to the business improvements by his own ex-pert witness, we conclude that he included the value of his established business or "good will" as an element of market value. Since Zaruba's opinion is based upon a consideration of an improper element of market value which substantially affects that value, his testimony will not support the jury finding of $30,000.00 market value of the remaining property before the taking.

■ Since this case will have to be remanded for a new trial we shall consider certain other assertions of error. The testimony regarding the cost of reconstructing the business improvements was introduced on the theory that the taking of the easement rendered these improvements worthless, which caused a depreciation in the value of the property remaining which could be minimized by reconstructing the improvements 25 feet back. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 89 S.W.2d 979, 980–981 (1936), held that if improvements which are situated upon the portion of land taken are essential to the use and enjoyment of the remainder of the land, or if their replacement, by removal or reconstruction is necessary in order to obviate depreciation in the value of the residue, the cost of removal, reconstruction or replacement may be a proper inquiry in connection with the issue of diminished market value of the remainder. A similar rule obtains where the improvements situated on the residue are rendered obsolete or valueless by the taking. The cost of reconstruction or removal may be properly considered in determining the depreciation of the remainder if the difference between the market value before and after the taking would exceed such cost of reconstruction or removal.

We reverse the judgments of the trial court and the Court of Civil Appeals and remand the cause for a new trial.