Walter E. HUCKABEE, Jr., et al., Appellants,

v.

The STATE of Texas et al., Appellees.

No. 6988.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 5, 1968.

Rehearing Denied Oct. 2, 1968.

W. G. Walley, Jr., Beaumont, for appellants.

Anthony Brocato, City Atty., David L. Larson, Asst. City Atty., Beaumont, for appellees.

STEPHENSON, Justice.

This is an eminent domain case involving the partial taking of the fee simple title to a tract of land for the purpose of widening an existing highway. Trial was by jury and judgment was rendered upon the verdict. The appellant is Huckabee, the landowner.

Appellant's first point of error is that the trial court erred in sustaining appellees' special exception to the following pleadings:

Condemnee would further show and represent unto the Court condemnee ac- quired title to said Lots 9 and 10 of the Cloverdale Addition and the improvements thereon located on or about August 15, 1963; thereafter condemnee caused the improvements on said premises to be completely renovated, secured a franchise for the preparation and sale of Colonel Sanders Kentucky Fried Chicken, and, on or about the first week in October, 1963, commenced the business of the sale to the public of said fried chicken and other food products; and from the time of commencement of said business until a short time before the taking of his property by the condemnor herein this condemnee earned a net profit from the operation of said business, an average of ten thousand ($10,-000.00) dollars per year. In this connection, condemnee alleges that, commencing on the 1st day of June, 1965 to the date of the trial of this cause, by reason of the taking of the property of condemnee herein for the construction of the highway improvements for which said taking was rendered necessary, and the excavations and construction involved in the making of said improvements, said profitable business of this condemnee has been totally interrupted and, in all reasonable probability, will continue to be totally interrupted until June 1, 1968, all with resulting loss to this condemnee of probable profits by reason of such temporary interruption of his business, all to his damage in the sum of $30,000.00, which said amount he is entitled to recover from said condemnor.

Such special exception reads in part as follows:

(A) Because such allegations show that defendant seeks to recover lost business profits allegedly resulting from the severance and taking itself, as a separate item of recovery, and such element is not compensable as a separate item of recovery.

(B) Because there is no allegation that defendant's remaining property has been deprived of access to the pub-

lic streets, or deprived of reasonable access, or that his access has been substantially interferred with during the construction and improvement of the highway and without pleading of same, the defendant is not entitled to recover business profits, allegedly lost, as a separate item of recovery.

(C) Because there is no allegation as to when defendant's remaining property was deprived access to the public streets, or deprived reasonable access, or the access substantially interferred with (all of which is not admitted but denied), or in what manner such was done, or that defendant was even in business at such time, and therefore plaintiffs are without notice as to what defendant will attempt to prove concerning these matters and without proof of the above, the defendant is not entitled to recover lost business profits as a separate item of recovery.

(D) Because there is no allegation as to what action of the plaintiffs prevented defendant from engaging in business and without such pleading, plaintiffs are without notice as to what defendant will attempt to prove to support the recovery of lost business profits as a separate item of recovery.

(E) Because there is no allegation that defendant's remaining property is large enough to continue his business after the date of taking or that his business can be expected to be resumed at that location and therefore defendant seeks to recover lost business profits as a separate element of damages, under circumstances wherein he had not shown same to be compensable under law.

Appellant refused to amend his pleadings.

■ By his pleadings, appellant was seeking damages in the amount of $30,-000.00 at the rate of $10,000.00 per year for three years, for the temporary interruption of his business. Under certain circumstances this is a proper item of damages. This court said in City of San Augustine v. Johnson, 349 S.W.2d 653 that the trial court in that case properly submitted issues to determine the amount of damages caused by temporary interruption of a business. In effect, it was held that this was not an element to be considered in the difference in the market value of that part of the land not taken, before and after the taking. The case of City of La Grange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243 was cited as authority for such proposition. The Supreme Court in the Pieratt case had this to say:

> In this connection, we think that where a part of a tract of land is condemned for street or road purposes, and the owner claims consequential damages to the land left, on account of the loss of profits arising from an established business being conducted thereon, while the road or street improvements are in progress, such claim may and should be presented at the condemnation proceeding, if it is of such a nature that it could reasonably have been foreseen and determined at the time. State v. Brewer, [141 Tex. 1, 169 S.W.2d 468]; 16 Tex. Jur., p. 954, and authorities there cited.

> It is the law that where a breach of a contract or a tort results in damages to an established business, in the form of loss of profits, which would have been derived therefrom absent such breach of contract or tort, the owner of such business may recover damages from the party causing such loss, measured by the amount of such loss of profits. 28 Tex. Jur. p. 215 § 114, and authorities there cited. We have already shown that the same rule applies in condemnation proceedings. In such proceedings an established business is property, and damages thereto in the form of loss of profits should be taken into consideration in such proceedings.

However, we do not find the facts of the instant case as qualifying it to the recovery provided for by the law of the Pieratt case, supra. Paragraph (E) of the State's exceptions, as above quoted called upon appellant to allege that the remainder of the property was large enough to continue his business after the date of the hearing, or that his business could be expected to be resumed. Appellant refused to amend and make these allegations. The allegations could not have been made, as appellant testified on the trial of this case that the remainder was too small to operate his business upon. This demonstrates appellant was not actually suffering a temporary loss of business and the trial court did not abuse its discretion in sustaining such special exception to the pleadings.

Appellant's next point of error is that the trial court erred in precluding the jury from considering the opinions of the witness Willard Hall as to the market value of the property based upon the income approach. This witness testified that there were three generally accepted methods to ascertain market values. That these were the cost approach, the market value or comparable sales approach and the income approach. This witness testified in detail as to comparable sales and the cost approach and gave the market value of the entire tract before taking to be $48,600.00. Hall then testified as to the income approach basing this upon a $750.00 per month gross economic rent to arrive at a value of $57,250.00 and stated this was the best and most reliable method to use in order to reach the market value of this property. The following testimony demonstrates the application by this witness of the income approach to arrive at the market value of this property:

Q. Then the third method you mentioned was the income approach. Would you tell his honor and the jury just what the income approach is and why it is used on commercial property?

A. Yes, sir; the income approach is frequently called the capitalization approach. It holds with the theory that a piece of commercial property as an investment will make a return to the investor on his investment * * *, just as stocks and bonds, just an annuities, would pay and normally in income producing property. A proper capitalization of the income stream that this property would contribute and pay to the owner, properly treated and properly capitalized, will give you an indication of the market value.

* * * * * *

A. Yes, sir; we speak of economic rent as opposed to contract rent. Economic rent is the amount of rent the property will bring by a study of the market place as of the date of appraisal. Contract rent is the rent contracted for under lease perhaps ten years previous in a different market condition; say a twenty year lease was made ten years ago and has ten years to run; that lease would be a contract and what the property would rent for today is free and clear of that lease. Economic rent is taken from a study of rental properties serving the same use and the same neighborhood, the same type of business, and it is how much this property would rent for if the owner desired to rent it in its present form and condition serving its present highest and best use.

The witness then stated that in his opinion the highest and best use for this property was the "carry-out" food preparation and dispensing business, and that this property could be rented for $750.00 per month for such purpose. He testified an investor requires an 8% return on his capital in this market and concluded as follows:

If this income stream is developed at $750.00 a month or $9,000.00 a year, an investor must set aside out of this money

he feels like he will never get for vacancy and credit loss over this fifteen year period of five percent or $450.00. This leaves an effective gross income of $8550.00. The owner is faced with certain expenses; one, he must pay the taxes. The taxes on this property were $246.90 for the year 1965. This is all you can go by. The insurance, he must have fire insurance, extended coverage and owners have what they call owners, landlords and tenants liability to protect himself against a law suit, and that would be $350.00. He must set up a reserve for maintenance which, in my opinion, would be five percent of the effective gross income or $427.50 a year. This is a reserve he must set up to pay for painting and so forth. He must set aside money for management of the property. If he gets an agent like me, say, to go out and collect the rents, he will charge him five percent. If he does it himself he is just earning it himself. This is $427.50 a year. He has to have a reserve for replacement. This is not just maintenance. Maintenance is one item, but if you have a roof that goes out and you have to build a new roof, the maintenance is gone. This would be two percent or $171.00 a year. Then he has to set saide money for legal fees for, let's say, fighting city taxes and so forth, and for accounting fees because when he takes on this investment it also increases the responsibility of taking care of his bookkeeping and accounting expenses, and this is $1794.00 a year. This gives you a land income of $6756.00 per year. Land is a non-wasting asset. If a man owns land and if the building explodes and is torn out, that is the end of that building, but the land is there forever. So he deserves a return on his land value of eight percent. If the land value is $24,000.00, eight percent return on his land would be $1988.00. You subtract that from the total net income and that leaves you $4768.00 imputable to the building. The building is a wasting asset. The building will become obsolete to keep it over a fifteen year period, so we take $4770.00 out of the building and compute it over a fifteen year period by dividing it by 14.7 percent and that indicates a value of the improvements, based on this income capitalization rate, of $32,435.00, which, adding the land back to it, indicates a total property real estate value, exclusive of personal property, of $57,285.00, or the value by the income approach rounded out would be $57,250.00.

Then on cross examination the witness Hall testified the owner could get more rent out of such property because of the profits and goodwill in the chicken business being operated on such property. Upon objection, the trial court then sustained an objection to the $57,000.00 value placed upon this property and instructed the jury not to give any consideration to such testimony.

The foregoing point of error will be discussed in connection with appellant's next point of error which is that the trial court erred in excluding the testimony of appellant as to the market value of the property involved in this case. He testified that in his opinion the market value of the entire tract before taking was $60,000.00. On cross examination, appellant testified that out of the $60,000.00 he would go along with the other appraisers in placing a value of $24,000.00 on the land and the balance of $36,000.00 on his whole business. He then testified the difference in $20,000.00 in cost of the improvements and the $37,000.00 value was his ability as a proprietor and businessman. Appellant then concluded that he did not know what the extra ingredient was that made the difference between the total of $44,000.00 value placed on the land and improvements by the appraisers and the $60,000.00 value placed on the property by him.

■■■ In our opinion, the testimony of Willard Hall was admissible under the law as stated in State v. Zaruba (Tex.) 418 S.W.2d 499, and the testimony of appellant was not. Testimony as to market value

**932**

based upon the income approach is approved both in City of Dallas v. Priolo, 150 Tex. 423, 242 S.W.2d 176 and the Zaruba case, supra. Appellant's testimony clearly shows that he was including the value of his business as a "going concern" or "goodwill", even though he would not say so specifically, and this substantially affected the value he placed upon the property.

We do not find the action of the trial court in striking out the Hall testimony to be reversible error under Rule 434 Texas Rules of Civil Procedure. On redirect examination, the following question was asked and answer given by the witness Hall:

Q. Based on that, what is your actual opinion, regardless of the technique that is used, of the market value of the part taken on June 1, 1965?

A. As I reported in that paper I wrote for Mr. Brocato, the total property would sell for $48,600.00.

In addition to that, appellant called M. L. Lefler as a witness and he was permitted to testify that in his opinion the income approach was the best method to use, and under this approach, the market value of this property was $56,200.00 We do not find the action of the trial court complained of was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

Appellant's last point of error complains of the action of the trial court in permitting a witness to testify as to the cost of replacement of a revolving electric sign based upon a conversation with a third person. This witness testified that the sign was worth approximately $750.00, and he got that figure from talking with appellant and a sign man. The objection to this testimony was that it was hearsay. Appellant testified the sign cost him $1,950.00 installed two years before the taking. The qualification of a witness to testify as to value is one for a trial

court to determine, and will not be disturbed on appeal unless there is an abuse of discretion. No such abuse is shown in this case, especially in view of the testimony of the witness that he got the figure named by talking with appellant as well as with a sign man. The point is overruled.

Affirmed.