**580**

Kiff WHITE, et al., Appellants,

v.

SOUTHWESTERN PUBLIC SERVICE
COMPANY, Appellee.

No. 9314.

Court of Appeals of Texas,
Amarillo.

Dec. 4, 1981.

Rehearing Denied Dec. 28, 1981.

Gassaway, Gurley, Sheets & Mitchell,
Jody G. Sheets, Borger, for appellants.

Lemon, Close, Shearer & Ehrlich, Robert
D. Lemon, Dana Ehrlich, Perryton, for ap-
pellee.

Before DODSON, COUNTISS and
BOYD, JJ.

BOYD, Justice.

In this condemnation action appellee
Southwestern Public Service Co. seeks to
establish an easement for power line trans-
mission purposes on a tract forty feet in
width along the west side of a half section
of land belonging to appellants Kiff White
and Arlene White, and farmed by appellant
Tommie White. This tract contains 2.419
acres, leaving 317.581 acres of land in the
half section not covered by the easement.
Trial was before a jury. A verdict was
returned finding: (1) the market value of
the strip condemned before taking was
$846.65; (2) immediately after taking the
market value of such strip was $169.33; (3)
the market value of the remainder was
reduced as a result of the condemnation;
(4) the market value of the remainder im-
mediately prior to taking was $111,153.35;
(5) the market value of the remainder im-
mediately after taking was $110,041.82.
Based on this verdict, judgment was ren-
dered for appellants in an amount of
$1,788.85. We affirm.

Appellants, by their first point, assert
error on the part of the trial court in ex-
cluding certain testimony of Glenn Roy as
hearsay, alleging the testimony was not
hearsay, it being offered for impeachment
purposes. By their second point they assert

error alleging that such testimony was admissible as "Admissions against Interest" by a named party under an exception to the hearsay rule. The testimony sought to be elicited was that appellee, through its representative Roy, was aware of statements that the presence of an H-frame structure such as that to be constructed did reduce the sales price of a tract of farm land. Appellee's value witnesses testified that they were not aware of any sales where the value of property had been reduced by the presence of such H-frame structures.

After a study of the record we do not find it necessary to determine whether or not the trial court erred in excluding such testimony. Assuming arguendo, that such action was error, we do not believe that such action was reasonably calculated to cause and probably did cause the jury to answer as it did, all issues supporting the judgment. Tex.R.Civ.P. 434, *State v. Parrish*, 159 Tex. 306, 320 S.W.2d 330, 333 (1958).

■ Viewed in a light most favorable to appellants, receipt of the proffered testimony would only have resulted in bringing before the jury evidence that statements had been made that the construction of structures such as those here involved had lessened the value of land, and that appellee knew of such statements. Appellant produced two other witnesses who testified that, in their opinion, the construction of such structures would lessen the value of such property. As to the question of possible reduced value, the testimony in question was cumulative, and the trial court's refusal to receive it was not reversible error. *See, e.g., Id.; Huckabee v. State*, 431 S.W.2d 927, 932 (Tex.Civ.App.—Beaumont 1968, writ ref'd n. r. e.). We find nothing in this record to justify an assumption that if the jury had known appellee was aware of an instance where the value of a tract had been affected by construction of an H-frame structure, such fact would reasonably have caused it to arrive at a different figure. In support of his position, appellant cites *Exxon Corporation v. Brecheen*, 526 S.W.2d 519, 525 (Tex.1975), and *Ledisco Financial Service, Inc. v. Viracola*, 533 S.W.2d

951, 958–59 (Tex.Civ.App.—Texarkana 1976, no writ). In each of these cases there would have been no other evidence on the points concerned other than the excluded evidence. This, of course, is not the case here and these cases are clearly distinguishable.

■ In point three appellant alleges error in the trial court's admission of testimony by appellant's witness Bill Moore. He argues such testimony was based, not on personal knowledge, but solely on hearsay, and therefore was inadmissible even in the absence of objection and cannot support the verdict.

Mr. Moore's qualifications to appraise land were not challenged, so his testimony must be judged by the standards governing admission of expert testimony. He testified that there were three basic approaches in ascertaining the market value of land: a cost approach, a market or comparative data approach and an income approach. He stated that he used the market or comparative data approach. In response to a question concerning his procedure in appraising this land he stated:

Well, of course, the first thing for any appraiser, and me in particular, in this case, is *to go look at the property*, find out where it is, find out from your soil survey maps and different things the condition of the soil and the condition of the land, the availability of water, whether or not there is adequate water, what the static water level is; any number of things that we attempt to secure.... The average appraiser either makes photographs on the ground, or photographs in some other manner, of the property so that when he gets back to his office and he's not in the county or in the area he can sit down and say, well, thus and so, and so forth and so on is true.... So number one, *look at the property*; number two, make photographs; number three, then, if you have not done work in the immediate area recently, then you begin to search the open market place.... But when I say I go to the market place, I go to the open market

and try to find out what a willing buyer and a willing seller has bought and sold property for, and more particularly if there's been no compulsion to buy or sell, then I find it necessary to talk to some buyers and sellers.... I'll talk to abstractors in the area ... and many times the abstractor has a broker's license. And after I've done that, many times I have checked the legal records down in the county clerk's office.... Of course, *I go look at the land* and, again, I check my soil survey maps on a particular sale, go look at the wells and see if they are on the outer edge, see if they are pumping a full 8″ stream or 6″ stream, whatever might be the situation... (Emphasis added).

Moore testified he had been around the property on more than one occasion. Appellant cites *Moore v. Grantham*, 599 S.W.2d 287, 289 (Tex.1980) as authority for the proposition that an expert opinion is inadmissible when based solely on hearsay. However, in that case, the court reiterates the rule that where a witness' testimony is predicated both upon personal knowledge and upon hearsay, the testimony is admissible. *Id.* at 289.

We also note, in condemnation cases such as this, appraisal witnesses have long been allowed to testify to comparable sales considered in reaching their opinions as to the value of property under consideration. In *State v. Oakley*, 163 Tex. 463, 356 S.W.2d 909, 914 (1962) our Supreme Court, after an exhaustive discussion, approved this procedure using the following language:

> [T]he real question, however, is whether such testimony, which is inadmissible to prove the facts of such sales as evidence of the value of the property condemned, is likewise inadmissible in another capacity, that is, to show *a basis of the opinion value stated by the expert witness* and in which capacity the testimony is not hearsay in the true sense. *The better reasoned view, in our opinion, is that the testimony is proper in such latter capacity, where, as in the case at bar, the testimony is given by a professionally qualified appraiser whose qualifications,*

*and the comparability of the sales to which he testifies, are not challenged.* (Emphasis added).

This rule has been followed in many cases and appears to be well established. *See, e.g., State v. Baker Bros. Nursery*, 366 S.W.2d 212, 214 (Tex.1963). The record reveals Moore had personal knowledge of the land and there was no error in the use by Moore of comparable sales in arriving at the value to which he testified. *Tennessee Gas Transmission Company v. Moorehead*, 405 S.W.2d 81, 85 (Tex.Civ.App.—Beaumont 1966, writ ref'd n. r. e.). Appellant's point of error three is overruled.

In appellant's point of error four he alleges the jury verdict was against the great weight and preponderance of the evidence and manifestly unjust. The question raised by this point requires this court, in the exercise of its peculiar powers under the constitution and Texas Rules of Civil Procedure 451, 453 and 455, to consider and weigh all the evidence in the case and to set aside the verdict and remand the cause for a new trial, if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Leatherwood v. Roberts*, 320 S.W.2d 381, 382 (Tex. Civ.App.—Waco 1959, no writ). The verdict of the jury is within the limits of the admissible testimony before it. There was competent evidence to support the jury's verdict. We cannot substitute our opinion of values for those found by the jury. *Southwestern Public Service Co. v. Vanderburg*, 581 S.W.2d 239, 246 (Tex.Civ.App.— Amarillo 1979, writ ref'd n. r. e.). Appellant's point of error four is overruled.

The judgment of the trial court is affirmed. Costs in this proceeding are adjudged against the appellant.