The STATE of Texas, Appellant,

v.

Stanley F. LACKEY et al., Appellees.

No. 16008.

Court of Civil Appeals of Texas, San Antonio.

Jan. 12, 1979.

Rehearing Denied Feb. 14, 1979.

Charles R. Lind, Asst. Atty. Gen., Austin, for appellant.

Corbin L. Snow, Jr., San Antonio, Ronald L. Sutton, Junction, for appellees.

## OPINION

CADENA, Chief Justice.

This is an appeal by the State of Texas from a judgment, based on a jury verdict, awarding $93,957.00 as compensation for the taking by the State of 15.545 acres out of a 1,513.59-acre tract for highway purposes. Defendants are Stanley F. Lackey and wife, Edna Bruns Lackey, named in the petition in condemnation as owners of the land, and Federal Land Bank of Houston, a lienholder.

In answer to the three special issues customarily submitted in cases involving a partial taking, the jury found that the value of the part taken was $7,073.00, and that the remainder was damaged in the amount of $86,884.00.

The State's first four points complain of the admission of the testimony of R. N. White, Jr., and Cliff Lewis, two of the witnesses who testified on behalf of defendants concerning the value of the part taken and the damages to the remainder. The State's complaint is limited to that portion of the testimony of the two witnesses concerning damage to the remainder.

White testified that in determining the value of the remaining land before and after the taking he considered the remainder to consist of 1,338 acres rather than 1,498 acres, which would be the acreage remaining if the part taken (15.545 acres) is subtracted from the area of the entire tract (1,513.59 acres). He explained his position by stating that a portion of the remaining land, consisting of 160 acres, "lacks unity of use with the other property." At this point the State objected to any testimony by White concerning damages to the remainder because his testimony showed that he had not appraised the entire property. Subsequently, the State moved to strike the testimony of White concerning the damages to the remainder.

■ In cases involving a partial taking of land the landowner is entitled to claim severance damage to all of his remaining land "provided it is contiguous and there is unity of use." *Southwestern Bell Tele-*

*phone Co. v. Ramsey*, 542 S.W.2d 466, 472 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.). Therefore, it was proper for the witness to limit severance damage to that portion of the land which, in his opinion, satisfied the requirement of unity of use.

*Kral v. State*, 345 S.W.2d 358 (Tex.Civ. App.—Amarillo 1961, no writ), does not support the State's contention that White's testimony should have been excluded. The evidence in that case established that all of the condemnee's remaining property "was used for one purpose as a unit." 345 S.W.2d at 359. The witness whose testimony concerned only a part of the remaining property did not state, as did White here, that the portion of the remainder which he had excluded from his appraisal had no unity of use.

■ *City of Irving v. Caster*, 397 S.W.2d 952 (Tex.Civ.App.—Dallas 1965, no writ) is also clearly distinguishable. In this case White testified that the value of the Lackey property before the taking was $450 an acre. Since White did not believe that the 160 acres in question had been damaged, he assigned to it the same value per acre after the taking as before the taking. There was no such testimony in *Caster*, and the testimony of White in this case clearly makes *Caster* inapplicable. Further, White's testimony was sufficient to enable the jury to calculate the "after" value of the entire 1,498 acres remaining after the taking simply by taking the value assigned by White to the 1,513.59 acres which he regarded as being part of the "unit" and adding to that figure the value of the 160 acres (160 × $450.00). See *State v. Brown*, 429 S.W.2d 207, 209 (Tex.Civ.App.—Corpus Christi 1967, no writ). This, of course, would have been no more than an exercise in futility, since adding the same figure to the minuend and to the subtrahend would not affect the result. It is thus apparent that if the admission of White's testimony was, in fact, error, it was harmless.

■ The State challenges White's testimony as to the value of the remainder because he stated that in arriving at his

valuation he considered damages "to the ranching operation" conducted by the Lackeys on the land. He testified that as a result of the division of the land by the highway there would be additional costs in the operation of the land. The State's reliance on *City of Dallas v. Hallum* is misplaced. 285 S.W.2d 431 (Tex.Civ.App.— Dallas 1955, writ ref'd n. r. e.). In *Hallum* the challenged testimony concerned the loss of business due to the diversion of traffic resulting from the closing of a street. Nor is *State v. Zaruba* applicable here. 418 S.W.2d 499 (Tex.1967). in *Zaruba* the Supreme Court applied the well settled rule that "damage to the established business or what is called 'good will' is not compensable as a separate and independent item of recovery." 418 S.W.2d at 502. White's statements concerning "damage to the ranching operation" did not relate to loss of business or customers due to circuity of travel or lessened access to the condemnees' business resulting from the building of the highway. White was referring to the fact that because the construction of the highway physically divided the remaining land, the landowner would encounter added difficulty in utilizing the remaining land as a unit in the ranching operation. This circumstance, according to White, would result in a loss of efficiency and a corresponding increase in the cost of operating the ranch. That is, the remaining land was made less suitable for its highest and best use because of the physical separation of one part of the land from the other. Such factors may be considered in determining severance damages. *See State v. Buck*, 489 S.W.2d 642 (Tex.Civ. App.—Corpus Christi 1972, writ ref'd n. r. e.).

With respect to the testimony of Lewis, the State complains that in appraising the value of the remainder before the taking, this witness considered the remainder as consisting of 1,498 acres, while his testimony as to the "after" value was based on the assumption that the remainder consisted of only 1,269 acres. An examination of Lewis' testimony reveals that he became confused while testifying. On some occasions he stated that in determining the value of the remainder after the taking he considered the entire tract of 1,498 acres. At other times he spoke of the remainder as consisting of 1,269 acres. His testimony can be correctly described as being inconsistent and contradictory at times. However, the fact that a witness contradicts himself is not a ground for excluding his testimony. The trial judge correctly ruled that such inconsistencies and contradictions were merely factors to be considered by the jury in determining the weight to be given to his testimony.

Points 5 and 6 assert that the trial court erred in refusing the State's request to submit a special issue to determine whether a unity of use existed between the 160 acres in question and the rest of the 1,498 acres which remained after the taking of the portion needed for the highway. With respect to severance damages, the trial court submitted an issue inquiring as to the value of the remainder before the taking and a separate issue inquiring as to the value of the remainder after the taking. This has been the method of submitting the question of severance damages since the decision in *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194 (1936). The answer to an issue inquiring as to the size of the remainder would not establish the existence or nonexistence of a component element of the landowner's claim; rather, it would merely determine the existence or nonexistence of some subordinate fact which, if accepted by the jury, would be a probative circumstance relevant to the determination of the controlling question. That is, the issue requested by the State would be merely "evidentiary" and the trial court did not err in refusing to submit such issue. *See* 3 R. McDonald, Texas Civil Practice § 12.06.1, at 280–83 (rev. 1970).

We need not determine whether, under the facts of this case, it would have been proper to submit an explanatory instruction defining the term "remainder" in such a way as to incorporate the requirement of unity of use. The State requested no such instruction or definition. A party

who desires the submission of an explanatory instruction or definition must tender the requested instruction or definition in substantially correct form. 3 R. McDonald, *supra*, at § 12.32.3. Over the State's objection, Alfred Sheppard testified that he had formerly been an Assistant State Attorney General for seven years and that, during such time, had filed several condemnation suits on behalf of the State. He added that on one occasion, with the full knowledge and consent of his superiors, he had included in one condemnation statement several tracts which were under different ownerships in order to minimize the severance damages to the several tracts resulting from a partial taking. The State, during cross-examination of Mr. Lackey, developed the fact that prior to the initiation of the condemnation proceedings a part of the 1,513.59-acre tract was the community property of Mr. and Mrs. Lackey, while the major portion of the tract was the separate property of Mrs. Lackey. In response to questions asked by counsel for the State, Mr. Lackey testified that he had conveyed his interest in the community property to his wife so that there would be a unity of ownership as to the entire tract. He explained that he did this because the State Highway Engineer had told him that the entire tract to be taken would be carved from that portion of the ranch which was community property. The engineer further explained that the possible effect of the taking on the portion of the ranch owned by Mrs. Lackey in her separate right could not be considered due to absence of unity of ownership. Since the ranch was being operated as a unit and, according to Mr. Lackey, the taking would affect the entire ranching operation, he conveyed his interest in the community land to his wife in exchange for another tract owned by his wife in her separate right.

■ The facts elicited by the State during the cross-examination of Mr. Lackey were clearly intended to establish the fact that the exchange of lands by Mr. and Mrs. Lackey would increase the amount of severance damages for which the State would be liable. The testimony of Mr. Sheppard tended to counteract this by showing that treatment of separate tracts as a unity did not necessarily result in an increase in severance damages. In any event, we conclude that Mr. Sheppard's testimony did not result in prejudice to the State, since he added that the manner in which the State had proceeded in this case could not possibly result in harm to the Lackeys. He added that in this case the State had given the Lackeys the benefit of every doubt, and he described the manner in which the State handled the case as "commendable."

■ The State assigns as error the fact that the trial court permitted defendants to introduce the judgment in the condemnation case concerning which Mr. Sheppard had testified. After the trial court had sustained the State's objection to all portions of the judgment with the exception of that portion which showed that the State had included in one proceeding several tracts owned by different persons, the State objected to the admission of any portion of the judgment. At this point defendants withdrew their offer of the judgment in evidence and the instrument was not admitted. We find no ground for reversal.

■ The State's assertion that the trial court erred in permitting Mr. Lackey to testify concerning portions of his conversation with one of the State's negotiators is without merit. The first reference to such conversation was elicited by the State during cross-examination of Mr. Lackey, and the State raised no objection nor did it request that the testimony be stricken. Under these circumstances the State has no basis for complaint. *See City of Rockwall v. Mitchell*, 497 S.W.2d 378, 382 (Tex.Civ. App.—Waco 1973, writ ref'd n. r. e.).

■ In its points 11 and 12 the State contends that improper jury argument by counsel for defendants was reasonably calculated to, and probably did, cause an excessive verdict and improper judgment. In complaining of a portion of the closing jury argument of defendants' counsel, the State argues that the effect of the argument was to ask the jurors to place themselves in the

position of the landowners. The portion quoted in the State's brief is as follows:

Ragsdale to Terrel is three hundred dollars, and so if you were the landowner—If you were in his shape, or a witness, or whatever, or a lawyer who does this kind of work for a landowner. I'm not ashamed. I don't mind representing Mr. Lackey here, it's a pleasure. So if you were doing that and the landowner—

At this point the State objected. The trial court sustained the objection and instructed the jury to disregard the argument. Defendants' counsel apologized.

We do not think the remarks of defendants' counsel can, unless considered out of context, fairly be classified as an appeal to the jurors to place themselves in the position of the landowners in the sense that it asks the jurors to treat the Lackeys as the jurors would like to be treated if their land had been taken.

During the trial, expert witnesses discussed values assessed in sales of comparable land in the area. While addressing the jury, counsel for the State took the position that only one of the sales could be regarded as a truly comparable sale. That portion of the argument by defense counsel quoted above is, when read in context, a defense of their use as a comparable sale—a sale which the State's attorney had described as not being comparable. It was a legitimate answer to the State's argument that the sale in question could not fairly be considered a comparable sale. In effect, by including lawyers and witnesses, counsel was merely underscoring his argument to the effect that the sale in question was properly to be considered as a comparable sale—a sale on which a landowner, lawyer or witness could properly rely as a guide to the value of the remainder before and after the taking. After the court had sustained the State's objection, defendants' counsel continued referring to the sale in question, concluding, "So I think we are entitled to talk about that case."

In any event, as already noted, the trial court sustained the State's objection and instructed the jury not to consider the remarks of counsel. Our Supreme Court has held that an argument which constitutes a direct appeal to the jury to consider the case from an improper viewpoint, in that its effect is to ask the members of the jury to put themselves in the defendant's place, [while clearly improper,] . . . is not of such a nature that its harmful effect could not have been removed, had the trial court sustained the exception thereto offered at the time the argument was made, and properly instructed the jury not to consider it.

*Fambrough v. Wagley*, 140 Tex. 577, 585, 169 S.W.2d 478, 482 (1943).

We realize that it is difficult, at best, to reconcile the cases which deal with improper jury argument as a ground for reversal. However, considering the nature of the remarks in question, we believe that the court's instruction was sufficient to nullify the tendency, if any, of the argument to prejudice the rights of the State.

Considering the testimony, the amount awarded by the jury as severance damages is not so high as to support the conclusion that it was based on bias, prejudice or sympathy rather than on the evidence properly admitted for the jury's consideration. The defendants' expert witnesses placed the severance damages at $253,806 (White), $272,844 (Lewis), and $225,390 (Powell). One of the State's appraisers estimated the severance damages to be $22,471, while the others estimated that the remainder was damaged in the sum of $20,925. The jury awarded severance damages of $86,844.

The amount awarded by the jury exceeded the high estimate of the State by $64,373 while being $66,919 in excess of the State's low estimate. However, the jury award was $186,000 under the defendants' highest estimate and $138,500 under the defendants' lowest estimate. There is no basis for holding that the jury was so swayed by bias, prejudice or sympathy that they rejected the State's testimony and accepted at face value the testimony of defendants' witnesses.

■ The other portion of the jury argument of which the State complains was as follows:

> All the witnesses pretty well agree that this ranch is worth a lot of money, but what happens. [The State's value witnesses] come in and try to lowball the Lackey family by saying, yeah, we're going to build a six foot high—

At this point the court sustained the State's objection to counsel's "lowball" remarks and instructed the jury not to consider them. Defendants' counsel apologized. We do not find the term "lowball" in any dictionary available to this court. Assuming that "lowball" is the opposite of "highball," as that latter term is defined in the dictionary, furnishes no guidance whatever. In its brief the State asserts that the "lowball" argument meant that the State "was attempting to pay less than market value and, therefore, cheat the landowners."

Assuming that the members of the jury gave the same meaning to "lowball" as does counsel for the State, the verdict, as pointed out above, cannot be considered so excessive as to indicate that the jury disregarded the trial judge's admonition or that they were so emotionally aroused by the argument that they allowed their passions to sway their judgment and reached a verdict based on considerations other than the evidence.

The State also contends that the cumulative effect of the "errors" of which it complains is such that justice demands a new trial be granted. We disagree.

The judgment of the trial court is affirmed.