FIRST CITY BANK–FARMERS
BRANCH, Texas, Appellant,

v.

Andre GUEX and Mary Ann
Kaprielian, Appellees.

No. 05–81–01199–CV.

Court of Appeals of Texas,
Dallas.

Sept. 23, 1983.

Rehearing Denied Oct. 19, 1983.

William A. Pritchard, Dallas, for appellant.

Alan M. Glassman, G. Robert Wileman, Dallas, for appellees.

Before CARVER, VANCE and GUILLOT, JJ.

VANCE, Justice.

First City Bank appeals from a judgment awarding recovery to Andre Guex for the bank having disposed of Guex's repossessed boat and trailer without giving notice to him, as a result of which Guex was deprived of the collateral for more than a year. We affirm.

This case arose out of the purchase of a boat by Guex and Marotte. They were co-makers of a note with the bank, the bank retaining a security interest in the collateral. After a period of time, Marotte, who had been making the payments, defaulted on the note. Guex then began making the payments, having first secured a written

agreement[1] with Marotte to ensure Guex would become sole owner of the boat when all payments had been completed and Marotte had been reimbursed for his interest.[2]

Later Guex experienced financial difficulty and defaulted on two payments. The bank sent a notice of default to Guex,[3] and subsequently took possession of the collateral. The bank officer, Ham, testified that after the bank sent notice of default to Guex, Marotte had called him, asking him what to do in view of his joint liability on the note. Ham informed him that if he would make the past due payments, plus late charges and repossession fee, the bank would let him have possession. Marotte first suggested the loan be put in his name only. Ham agreed, but during the last moments of the phone call Marotte changed his mind and requested that the loan be put in the name of his girlfriend, Kaprielian. The agreement was that the necessary documents would be prepared to put the loan in Kaprielian's name, and that Marotte would guarantee the note. It is undisputed that thereafter, on June 16, 1980, the bank officer accepted a check drawn by Kaprielian on her family trust account in an amount to cover the amount of arrearage and storage. The check carried the notation "Deposit on Clipper, part down." It was disputed whether Kaprielian or Marotte took the check to the bank,[4] however the bank released the boat and Marotte had it delivered to the address where both he and Kaprielian resided. Two days later the bank officer apparently called Kaprielian, advising her that she could buy the boat by paying off the outstanding balance of the loan. The formalities were to be executed the next day. It is undisputed that the bank failed to give Guex any notice of this intended disposition to a third party.

Meanwhile, Guex had contacted the bank about the disappearance of his boat, and the same bank officer had informed him that he could have his boat in return for a cashier's check for the unpaid balance. Guex testified that on June 19, 1980, he brought such a check to the bank, while Kaprielian and Marotte were there, but the bank refused to accept it, stating the boat had been sold for $1500 to a third party.[4a] Kaprielian had just met with the bank officer, as agreed, and signed a promissory note and a security agreement which covered only the balance due on the boat.[5] Guex later returned to the bank, this time with his attorney, who persuaded the bank to accept the proffered cashier's check. The bank officer informed Guex that he could get his boat from Kaprielian. Not until fourteen months later did Guex recover his boat, which had been damaged in the interim.

The bank eventually returned the executed promissory note and security agreement to Kaprielian, having marked "Void" across it. Although in the trial court both Guex and Kaprielian recovered judgment against the bank, the bank appeals only as to Guex.[6]

The claim of Guex asserted that the bank wrongfully disposed of his collateral without notice to him of sale or other intended disposition required by 1) the contractual financing provisions between the parties and 2) § 9.504(c) of the Tex.Bus. & Com.

1. The bank was not a party to this agreement, although it had a copy of it on file.

2. Guex did reimburse Marotte for his interest. Marotte is not a party to this appeal, and neither is Kaprielian, the party to whom the bank is alleged to have disposed of the boat.

3. The bank officer stated that only one notice was mailed out as a routine, so Marotte had not necessarily received one.

4. The bank officer testified that Kaprielian brought him the check in person, while Kaprielian recalled giving the check to Marotte.

4a. Kaprielian testified that, upon seeing Guex in the bank, she left hurriedly.

5. The amount of this note was only $1,266.48, whereas the total sum borrowed by Guex and Marotte for his boat was $6,583.50. Kaprielian also signed the Application for Certificate of Title and an insurance agreement.

6. The bank had originally appealed as to Kaprielian also, but those parties agreed to a reversal as to her, which judgment was rendered by this court on May 21, 1982.

Code Ann. (Vernon Supp.1982). Section 9.504(c), in pertinent part, provides:

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private *sale or other intended disposition* is to be made *shall* be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale [emphasis added].

Section 9.507(a) of the Tex.Bus. & Com. Code Ann. (Vernon Supp.1982) provides for both compensatory and statutory damages if the disposition by the secured party has occurred without the notice required by section 9.504(c).

The jury found that the bank had disposed of the collateral and that Guex was entitled to exemplary damages; however, the court awarded him statutory damages only. On appeal Guex urges a cross-point seeking the exemplary damages found by the jury.

The bank argues that the term "disposition," as used in sections 9.504 and 9.507, has an obvious meaning of transfer of title. Thus the bank reasons that there was no sale or disposition of the collateral as a matter of law or fact because the bank did not transfer *title* to Kaprielian, the girlfriend of the co-maker of the note, Marotte.[7] We disagree. Section 9.504(c) requires notice to the debtor in either of two instances, a "sale or other intended disposition." While a transfer of title may be necessary to complete a sale, we have concluded that a "disposition," as contemplated in sections 9.504 and 9.507, is not limited to those transactions which involve a transfer of title. A transfer of possession to a third party without notice to the debtor is also a violation of section 9.504(c).

This construction is consistent with other provisions of the Code. Section 9.202 detaches the rights and duties of the parties from passage of title:

Each provision of this chapter [Secured Transactions], with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor.

The official comment to section 9.202 reinforces that statement, expanding its application to include third parties: "The rights and duties of the parties to a security transaction and of third parties are stated in this Article without reference to the location of 'title' to the collateral." *See also* Tex.Bus. & Com.Code Ann. § 2.401, comment 1 (Vernon 1968). The proposition that under Article 9 (Secured Transactions) of the Business & Commerce Code the location of title does not determine the rights of the parties accords with the underlying purposes and policies of the Code, which are to simplify, clarify and modernize the law governing commercial transactions and to permit the continued expansion of commercial practices through custom, usage and agreement of the parties. *See* Tex.Bus. & Com.Code Ann. § 1.102(b)(1)–(2) (Vernon 1968).

Furthermore, section 9.504, the notice provision, and section 9.507, the damages provision, refer to transfer of the collateral rather than transfer of title to the collateral. Section 9.504(a) gives a secured party after default the right to "sell, lease or otherwise dispose" of the collateral. Only the first category, a sale, would eventually involve a transfer of title. The first official comment under section 9.504 emphasizes: "Subsection (1)[8] does not restrict disposition to sale: the collateral may be sold, leased, or otherwise disposed of . . . ." Section 9.507(a), which provides an aggrieved party with a right to damages against a secured party who gave no notice, does not even refer to a "sale," but only to a "disposition." Clearly the draftsmen of this stat-

---

7. At the same time that she signed the promissory note, Kaprielian had signed the application for Certificate of Title which the bank had prepared. Mailing it to Austin was all that remained to be done.

8. The Texas statute designates this as subsection (a).

ute contemplated that the disposition could be something other than a sale and transfer of title. In dealing with the same statute enacted in Texas as section 9.504(c), the mandatory notice provision, the Oklahoma Supreme Court noted that:

> The clear intent of the applicable provisions of the UCC is to allow the repossessing secured party substantial flexibility as to the method chosen to dispose of the collateral. Brunswick Corp. v. J. and P. Inc., 424 F.2d 100 [7 UCC Rep. 643] (10th Cir.1970). Although other options are available to dispose of repossessed property other than by sale ... Wilkerson Motor Co. v. Johnson, 23 UCC Reporting Service 842, 845 (Okla.1978).

That a "disposition" may occur without a completed sale and transfer of title is reinforced by the language of section 9.504(c): "Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts." The bank officer, Ham, stated at trial that upon learning of the boat's repossession Marotte had called to ask if the bank would put the loan in Kaprielian's name, relieving him of joint liability on the note.[9] Ham agreed to this suggestion. At trial Ham stated that Kaprielian (not Marotte, as the dissent claims) presented him a check for the arrearage, having written it out at his desk, and that the bank then released the boat from storage.

▮ The jury was instructed that:

> The Bank shall be deemed to have 'DISPOSED OF THE COLLATERAL' if it delivered *possession* or *custody* of the boat and trailer to Mary Ann Kaprielian *with the intention of investing* her with such *proprietary interest* in the boat and trailer as to enable her to retain them in

her possession for a period of time or permanently. [Emphasis added.]

The bank failed entirely to object to the charge as formulated or to request a different definition. A failure to raise objections in the trial court waives points of error for purposes of appeal. *Ormsby v. Travelers Indemnity Co.*, 601 S.W.2d 779, 780 (Tex. Civ.App.—Waco 1980, no writ); *First State Bank and Trust v. George*, 519 S.W.2d 198, 205 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.); Tex.R.Civ.P. 272, 274. Also, a party who desires submission of an explanatory instruction or definition must tender the requested instruction or definition in substantially correct form. *State v. Lackey,* 576 S.W.2d 685, 688–89 (Tex.Civ. App.—San Antonio 1979, writ ref'd n.r.e.). We hold that the jury finding that the bank had disposed of the collateral to a third party was not erroneous as a matter of law. If the definition of "disposition" in the charge to the jury contained error, the bank waived it by not objecting to the definition and by not tendering its own version.

The bank also complains of insufficient evidence to support the jury finding that the bank had disposed of the collateral to Kaprielian when the bank, after receiving Kaprielian's check for the amount in default, released possession of the collateral, several days prior to the date on which Kaprielian executed the note for the balance. However, Kaprielian testified that after tender of the amount in default on June 16th, the bank delivered the boat to her. The bank officer, Mr. Ham, testified that, although he had told Marotte he could have possession of the boat upon payment of the amount in default and the signing of an agreement to keep up the payments, Ham then agreed to put the loan in Kaprie-

---

**9.** Marotte apparently had experienced financial troubles of his own, for a private agreement between himself and Guex that Guex would become sole owner of the boat if he paid the balance due on the loan was formulated after an earlier default of Marotte.

The dissent contends that the bank surrendered the boat to Marotte pursuant to a provision of that agreement that if, in turn, Guex ever should default, Marotte would be obligated to pay the loan balance and would own the boat.

However, the bank was not a party to that agreement and had no authority to act pursuant to its terms. In addition, it is undisputed that Marotte failed to pay the loan balance, therefore he was not entitled to sell ownership of the boat, even under the private agreement. The rights and duties of Marotte and Guex to each other under the agreement were irrelevant to the bank's statutory duty to give Guex, as a debtor, notice before disposing of these consumer goods.

lian's name and sell it to her. The jury clearly believed the testimony of Ham, the bank's officer, which the bank attempts to undermine on appeal. Additionally, it is undisputed that three days after the boat was released Kaprielian met with Ham at the bank and signed a promissory note for the outstanding balance on the boat.[10] The documents transferring title to her were drawn up, and these are in the record. These documents of title were never mailed to Austin for processing, however, because Guex, accompanied by his attorney, appeared at the bank, interrupting the transaction and causing Kaprielian to flee the bank.[11] The bank then reversed its course, accepting Guex's cashier's check for the balance, but declining to return to him the boat which the jury found had been delivered to Kaprielian, and which was subsequently secreted. Not until fourteen months and much legal maneuvering had passed did Guex recover his boat, by then badly damaged.

■ Having reviewed the record, we find that it contains ample testimony from which the jury could have concluded that the bank had "disposed" of the collateral, as defined in the charge (possession plus intent to invest a proprietary interest). *See In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). This point of error is overruled.

■ The bank also contends that there were no pleadings or competent evidence to support the jury's finding that the bank delivered possession of the boat and trailer to Kaprielian on June 16, 1980, that such finding was against the great weight, and was based on insufficient evidence. We disagree. Guex's trial amendment deleted the assertion in paragraph XI of his second amended petition that the bank had transferred title without giving notice, substitut-

ing for it an allegation that the bank had disposed of the collateral without giving notice. Because "disposition," as defined by the charge, included the concept of a transfer of possession, this amendment supplied the required pleading. The testimony was conflicting as to whether the bank delivered possession to Kaprielian or to Marotte, her boyfriend, who shared the same address. However, the jury found in a special issue that the bank delivered possession to Kaprielian on June 16, 1980. It is the sole province of the trier of fact, here the jury, to judge the credibility of the witnesses and the weight to be given their testimony. *Sansom v. Pizza Hut Inc.,* 617 S.W.2d 288, 292–93 (Tex.Civ.App.—Tyler 1981, no writ); *Williams v. Lemens,* 609 S.W.2d 596, 600 (Tex.Civ.App.—Austin 1980, no writ). We overrule this point of error.

■ The bank further contends that the trial court erred in awarding Guex statutory damages because there was no proof of actual damages. Section 9.507(a) provides that:

> If it is established that the secured party is not proceeding in accordance with the provisions of the subchapter disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party *any loss* caused by a failure to comply with the provisions of this subchapter. If the collateral is consumer goods, the debtor has a right to recover *in any event* an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the

---

10. The dissent attempts to cast the promissory note which Kaprielian signed three days after taking possession as a "renewal note", renewing the original note of Guex and Marotte rather than constituing evidence of a sale to Kaprielian. The jury found that by releasing the consumer goods to a third party three days earlier, with an intent to invest a proprietary interest, the bank had "disposed" of the collat-

eral. It is undisputed that the notice required by statute was not given. Attempting to relabel the subsequent promissory note is pointless.

11. The bank later returned to Kaprielian the promissory note she had signed, with Marotte as guarantor, marked "Void."

time price differential plus ten percent of the cash price. [emphasis added]

Thus, section 9.507(a) provides two penalties for disposition of the collateral without notice to the debtor. The first is compensatory in nature, to reimburse for "any loss" resulting from the disposition. The second is a statutory minimum recovery ("in any event") where the collateral is consumer goods, and this does not require proof of actual damages. *See Garza v. Brazos County Federal Credit Union,* 603 S.W.2d 298, 300 (Tex.Civ.App.—Waco 1980, no writ); *Hensley v. Lubbock National Bank,* 561 S.W.2d 885, 891–92 (Tex.Civ.App.—Amarillo 1978, no writ) (on motion for rehearing). *See also* Tex.Bus. & Comm.Code Ann. § 9.507 comment 1 (Vernon 1968) ("minimum recovery" provided in the case of consumer goods); 4 ANDERSON, UNIFORM COMMERCIAL CODE § 9.507:6 (1971). It is undisputed that the collateral consisted of consumer goods. Since proof of economic loss, which is required for compensatory damages, is not required by the statute in order to recover statutory damages, we hold that Guex is entitled to recover the latter. *Garza,* 603 S.W.2d at 300. *Cf. Food City, Inc. v. Fleming Companies,* 590 S.W.2d 754, 761 (Tex.Civ.App.—San Antonio 1979, no writ).

Complaining also of the trial court's award of attorneys' fees in the trial court and on appeal, the bank contends that the bank did not contract for attorneys' fees and same were not authorized by Tex.Bus. & Com.Code Ann. § 9.507(a) for failure to give the required notice. The jury found that the bank had disposed of the boat by giving Kaprielian possession on June 16, 1980. Guex pleaded breach of contract in addition to other grounds. Section 9 of the loan note contract and security agreement between Guex and the bank provided that:

Secured party will give Debtor reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or any intended disposition thereof is to be made.

The evidence was uncontroverted that the bank failed to give Guex any notice of either a sale or an intended disposition, thereby both breaching its contract and violating the requirement of section 9.504(c). Tex.Rev.Civ.Stat.Ann. art. 2226 (Vernon Supp.1982) authorizes the recovery of attorney fees in "suits founded on oral or written contracts." *Ellis v. Waldrop,* 627 S.W.2d 791, 798 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). The suit at bar was founded on the written contract between Guex and the bank, as well as on violation of a statute. Therefore, the trial court's award of attorney fees could properly have rested on either ground.

Furthermore, the compensatory damages provision of section 9.507(a) gives the debtor the right to recover "any loss" caused by the secured party's failure to comply with the mandatory notice provision of section 9.504(c). This is measured by the economic loss sustained. *Food City, Inc.,* 590 S.W.2d at 761. Section 9.507(a) does not require that the debtor elect to recover compensatory damages or statutory damages, nor does it state that the two provisions for damages are mutually exclusive. Comment 1 to section 9.507(a) does describe statutory damages in the case of consumer goods as a "minimum recovery," leading us to the conclusion that the two provisions for damages can be cumulative in certain instances. We hold that in asserting his right to notice under section 9.504(c), the injured consumer may recover attorney fees as "any loss" under section 9.507(a), in addition to statutory damages. Were it otherwise the cost of counsel would prohibit those harmed from pursuing the remedy provided them by the legislature.[12]

Under a cross point Guex seeks to recover the exemplary damages awarded him by the jury but denied by the trial court's judgment notwithstanding the ver-

---

12. In this case the trial court awarded the plaintiff $2,325 for attorney fees in the trial court, an additional $1,125 in the event of an appeal to this court, and another $750 if appealed to the Texas Supreme Court. The statutory damage award of $1877.75 alone would clearly not have made the plaintiff whole.

dict on this issue. In the absence of a finding of actual damages supported by the evidence, an award of exemplary damages must fail. *See City Products Corp. v. Berman,* 610 S.W.2d 446, 450 (Tex.1980); *Phillips v. Wertz,* 546 S.W.2d 902, 907 (Tex.Civ. App.—Dallas 1977, writ ref'd n.r.e.). In this case no issues were submitted to the jury inquiring whether Guex had suffered any actual damages, and if so, the amount thereof. Furthermore, there were no pleadings or proof that the bank acted with malice or intent to defraud Guex, although such a finding is the second prerequisite to an award of exemplary damages. *See Ware v. Paxton,* 359 S.W.2d 897, 898–99 (Tex.1962); *Meier v. Van Huss,* 379 S.W.2d 929, 931 (Tex.Civ.App.—Austin 1964, no writ). An act will not be deemed malicious, and so warranting punitive damages, merely because it is unlawful or wrongful. *Ware,* 359 S.W.2d at 899. For a discussion of malice to be inferred from acts of an agent, *see Ledisco Financial Services, Inc. v. Viracola,* 533 S.W.2d 951, 957 (Tex.Civ.App. —Texarkana 1976, no writ).

Guex counters that in addition to having breached its contract with him, the bank was guilty of the tort of conversion under section 9.505(a), Tex.Bus. & Com. Code Ann. (Vernon Supp.1982), and that this warrants the award of exemplary damages by the jury. We cannot agree. Section 9.505 speaks to the failure of a secured party to dispose of the collateral within ninety days of taking possession. In this case the jury found in a special issue that the bank had disposed of the collateral to a third party; thus there was no failure to dispose. Consequently, section 9.505(a) does not apply. When a distinct, willful tort is alleged and proved in connection with a suit upon a contract, one may recover punitive damages, but even then the complainant must prove that he suffered some actual damages. *City Products Corp.,* 610 S.W.2d at 450. *See McDonough v. Zamora,* 338 S.W.2d 507, 513–14 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.). In this instance, Guex testified to the loss of use of his boat and trailer for more than a year, but there was insufficient proof of actual

damages, i.e. out-of-pocket expenses. Our holding that the trial court properly awarded Guex statutory damages under section 9.507(a) does not affect our conclusion that the trial court's denial of exemplary damages must be affirmed. It is well established that exemplary damages cannot be recovered for mere violation of a statute. *Jones v. Ross,* 141 Tex. 415, 173 S.W.2d 1022, 1024 (1943); *McDonough,* 338 S.W.2d at 514. Furthermore, the "minimum recovery" provided by section 9.507(a), which does not require proof of actual damages, has been aptly described as a penalty. *See Hensley v. Lubbock National Bank,* 561 S.W.2d 885, 891 (Tex.Civ.App.—Amarillo 1978, no writ). To permit an award of exemplary damages in addition to an award of statutory damages would result in the imposition of a double penalty. This we will not do. The trial court correctly denied exemplary damages.

The dissent asserts that a jury finding that the bank disposed of the boat to Kaprielian to Guex's damage conflicts with a finding that the bank failed to dispose of the collateral to Kaprielian to her damage. However, the appellant has not assigned such error, and the transcript contains no finding that the bank "failed to dispose of the collateral to Kaprielian to her damage." Among the jury findings are the following: 1) the bank disposed of the boat to Kaprielian on June 16, 1980 (the date the boat was released); 2) the bank delivered possession of the boat to her on the same date; 3) Kaprielian had paid the arrears on the boat on that same date; 4) the bank falsely represented to Kaprielian that she would become owner of the boat by executing a note for the balance; and 5) $2008 would compensate Kaprielian for her damages resulting from the actions of the bank. Thus there is no conflict in the jury findings.

The bank lastly contends that the trial court erred in assessing costs against the bank. In view of our affirmance of the judgment of the trial court, we affirm the assessment of costs also.

In closing, the majority notes that although the dissent clearly disagrees with the majority regarding the proper interpretation of the applicable provisions of the statute, the dissent fails to provide any authority in support of its position.

CARVER, Justice, dissenting.

The facts found by the jury, as well as undisputed facts in the record, conclusively show that First City Bank did not *dispose* of any collateral of Guex, consequently, I would hold that Guex had failed to prove his case.

The record reflects without dispute that the collateral was a sailboat purchased jointly by Guex and Marrote, using the bank's funds as a part of the purchase price for which the bank received the *jointly executed* note and lien from Guex and Marotte. It is also undisputed that Guex and Marotte subsequently agreed in writing between themselves that Guex would acquire Marotte's interest in the sailboat *if* he paid the remaining payments when due; *otherwise,* Marotte would reacquire the full interest in the sailboat if Guex defaulted and Marrote would pay the payments remaining from Guex's default. It is further undisputed that Guex defaulted and, by the agreement, Marotte was the owner of the sailboat and obligated to pay the balance due the bank. It is additionally undisputed that the bank had taken possession of the sailboat but had surrendered it to Marotte, the only debtor entitled to the collateral under the agreement between the joint debtors. By these undisputed facts, Guex's rights in the collateral [sailboat] were disposed of by his own agreement coupled with his own default, not by the bank. I would hold that Guex cannot complaint when the creditor bank merely honored the specific written agreement between the two debtors that, upon debtor Guex's default debtor Marotte was entitled to the boat and was solely burdened with their note's balance.

As to Kaprielian's involvement with the boat, the evidence is also undisputed that Kaprielian lived in the same house with Marotte; that after the bank repossessed the boat, Kaprielian's check for $508.25 (note arrears plus boat storage) was exchanged for a release of the boat to Marotte; that Marotte removed the boat to the residence occupied by him and Kaprielian; that Kaprielian's note proffered to the bank stated on its face that it was a renewal of the original obligation of Guex-Marotte and was guaranteed by Marotte; and that Guex appeared at the bank, paid the unpaid balance of Guex-Marotte note, and received the Texas Certificate of Title reflecting *Guex and Marotte* as owners and showing the bank's lien as released. It is evident Kaprielian's note to the bank, guaranteed by Marotte, was in pursuit of Marotte's written contract with Guex that, upon Guex's default, Marotte would own the boat and be obligated to pay the bank. It is likewise evident that Guex's payment of the balance due the bank, despite his earlier default, was in pursuit of his equity of redemption. Whatever the merits of the respective claims between these common debtors, it is clear that the bank did not "dispose" of the common collateral to anyone save the collateral's common, though disputing, owners.

The pleadings of the parties are illuminating. Guex pleads that the bank disposed of the collateral without notice to him. Kaprielian pleads that the bank breached its contract to dispose of the collateral to her. Both Guex and Kaprielian rely on the identical conduct of the bank but insist it produced opposite results. The jury was submitted 13 issues which produced findings that the bank disposed of the collateral to Kaprielian to Guex's damage, but failed to dispose of the collateral to Kaprielian to her damages. I submit that a valid judgment cannot rest upon such an irreconcilable conflict in the jury's findings.

The real dispute in this case did not involve the bank at all but rested in the effect to be given to the agreement between the parties and applicable after Guex defaulted. Did Guex have a right of redemption against his co-debtor despite his own default? The trial court held that Guex was entitled to redeem and command-

ed by its judgment that Marotte endorse their common title to Guex. Did Marotte have and retain Guex's rights in the boat so long as he paid the balance due the bank? The written agreement expressly so provides. Until Guex exercised his court-declared right of redemption, was Marotte free to adjust his obligation to the bank by getting Kaprielian to renew the Guex-Marotte note guaranteed by Marotte? Since Guex's only right (before redemption) was protection against any claim by the bank and since the renewal doubled the debtors protecting Guex, the renewal would seem consistent with the written agreement of Guex and Marotte. Before Guex redeemed, was the bank free to treat Marotte as the owner of the collateral? The Guex-Marotte agreement expressly so provides and the record reflects that Guex redeemed *after* the renewal note.

Under this record, I would hold that the renewal note could not constitute a "sale, lease or other disposition" of a debtor's collateral without notice because at the time of the asserted "disposition" Guex's default in his agreement with his common owner had, by the terms of that agreement, vested all rights in the collateral in Marotte. The bank's "disposition" of collateral to, or at the instance of, the only owner and debtor with an interest in the collateral at the time is not a "disposition" contemplated by section 9.504(c) Tex.Bus. & Com.Code Ann. (Vernon Supp.1982).