# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=====
### NO. 03-04-00657-CV
=====

**Robert D. Kizer, Appellant**

**v.**

**Meyer, Lytton, Alen & Whitaker, Inc. d/b/a MLAW Consultants and Engineers, Appellee**

=====
### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. 269,764, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING
=====

### M E M O R A N D U M   O P I N I O N

Robert D. Kizer appeals a take-nothing judgment on his claims against Meyer, Lytton, Alen & Whitaker, Inc. ("MLAW"), a structural engineering firm, for negligence, breach of warranty, and violation of the Deceptive Trade Practices Act in connection with the design and construction of his house's foundation. *See* Tex. Bus. & Com. Code Ann. §§ 17.01-.854 (West 2002 & Supp. 2004-05). Specifically, Kizer alleged that the MLAW engineers falsely represented their prior experience and success with a unique foundation, took advantage of Kizer's lack of experience, and induced him to act as a "guinea pig" for a novel design. Kizer further claims that the tile flooring in his house cracked extensively due to the shifting soil beneath the foundation, and that MLAW failed to recommend a preventive measure called a "capping slab." On appeal, Kizer contends that

"the record is legally and factually insufficient to support the jury's findings" against him. For the reasons stated below, we affirm the trial court's judgment.

**BACKGROUND**

In 1998, Kizer contracted with home designer Patrick Nesby through Larry Wood Builders (collectively "the builders") to design and build a house near Manor, Texas. The soil in the area is composed of porous black clay that swells and shifts as temperature and moisture levels change. Considering the soil's composition, the builders recommended that Kizer hire MLAW to evaluate options for the foundation. Kizer originally contracted for a typical concrete slab foundation at a proposed cost of $4,000 to $5,000; however, MLAW and the builders warned him that such a foundation would have a tendency to crack because of the shifting clay soil beneath it. Instead of using the typical foundation consisting of a single concrete slab, Kizer installed a pier and beam foundation to better withstand the effects of the shifting soil.

Construction of the foundation began by drilling deep holes into the clay soil, and positioning steel beams, which rested on "bells," into the holes. Next, a concrete frame bearing the layout of the house was placed on the steel beams. The foundation's construction concluded with the horizontal placement of four-foot-wide, hollow-core concrete planks or "slabs" over the frame, which created a crawl space beneath the elevated foundation. By using individual concrete slabs that were designed to allow for slight movement, the parties intended to protect the foundation from the shifting soil and to reduce the potential for damage to the house.

MLAW constructed the foundation. Kizer entered into a separate contract for the installation of tile flooring throughout the house. The installation did not call for the use of an

2

intervening layer or "capping slab" to insulate the tiles from the motion of the individual concrete slabs. As a result, the tile flooring developed a pattern of cracks at four-foot intervals, located along the joints of the underlying slabs. Kizer estimated that the cost of removing all the tiles and permanent fixtures on the floor, installing the capping slab, placing new tile, and covering his relocation expenses during the repairs would be $200,000.

Kizer sued MLAW for negligence and breach of warranty. He also alleged that MLAW violated the DTPA when it "represent[ed] that [its] . . . services ha[d] . . . characteristics, benefits, or qualities which they [did] not have," that MLAW committed an "unconscionable action" by taking advantage of Kizer's lack of experience, and that MLAW's violations were a "producing cause of [his] economic damages." *See* Tex. Bus. & Com. Code Ann. §§ 17.46(b)(5) (West Supp. 2004–05), 17.45(5) (West 2002), 17.50(a) (West 2002).

At trial, Kizer testified that MLAW misrepresented that it had successfully used the same type of elevated foundation on a house that Kizer's neighbor Roy Neidig owned, approximately three miles from Kizer's land. Kizer also testified that MLAW failed to advise him that a capping slab would need to be installed before laying tile over the foundation. Kizer further testified that MLAW took advantage of his relative inexperience in construction by recommending a novel foundation design and that MLAW's acts and omissions caused the cracks in his tile floor.

MLAW countered that it never claimed to have installed the foundation of the Neidig house,[1] and that it had the proper, industry-standard experience with this type of foundation (albeit

---

[1] MLAW testified that the foundation of the Neidig house was designed by Roy Ullrich of MLA, a sister company with offices across the hall from MLAW, but a distinct entity.

primarily in commercial, not residential, construction). MLAW's witnesses also testified that, although they were not required to advise Kizer about tile installation, they had nevertheless advised him to install a capping slab before laying tile or any floor finish besides carpet. They also testified that it was their understanding that the builders suggested the capping slab to Kizer, but Kizer declined, stating that it was unnecessary and that he did not want to spend the extra money on it because he was going to use carpet. MLAW pointed to Kizer's professed experience in construction, as well as the testimony that Kizer acted as his own general contractor and unilaterally decided against using the capping slab for economic reasons, relying on his own expertise. MLAW also testified that although Kizer was contractually bound to inform MLAW of his objectives and specifications on the project, Kizer failed to inform MLAW that he intended to install tile. MLAW denied responsibility for Kizer's failure to install a capping slab or the resulting cracked tiles.

The jury rejected Kizer's claims and delivered a take-nothing verdict. The trial court rendered judgment on the verdict and denied Kizer's motion for a new trial. Kizer's appeal challenges the sufficiency of the evidence supporting the jury's failure to find a DTPA violation based on MLAW's misrepresentation of its prior experience in designing the foundation.

## ANALYSIS

### Standard of Review

A legal sufficiency challenge requires the reviewing court to view the evidence in a light that tends to support the contested finding and to disregard evidence and inferences to the contrary. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003). When a plaintiff claims that a jury verdict is incorrect and that it should have prevailed as a matter of law, the plaintiff

4

must show both that no evidence supports the verdict and that contrary evidence conclusively proves the opposite as a matter of law. *City of Keller v. Wilson*, 2005 Tex. LEXIS 436, at \*24 (Tex. June 10, 2005). In such a case, while evidence contrary to the verdict will be considered, it will be disregarded unless it is conclusive. *Id*. at \*25, \*50. In addition, the reviewing court must indulge reasonable inferences that the jury may be presumed to have made in favor of their verdict, and disregard contrary evidence unless a fact finder could not. *Id*. at \*50, \*66.

In a factual sufficiency review, all of the evidence, both in favor of and contrary to the verdict, will be considered together. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). The verdict will be set aside only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. *Id*.

**Discussion**

In a single point of error, Kizer claims that "[t]he record is legally and factually insufficient because undisputed, uncontroverted evidence showed that MLAW violated DTPA as a matter of law." In support of this contention he makes three arguments: (i) that MLAW's misrepresentation of its experience with the elevated slab foundation was a violation of the DTPA as a matter of law; (ii) that MLAW took advantage of his inexperience and that this was an unconscionable action as a matter of law; and (iii) that MLAW's actions were a producing cause of his damages. We will address each of Kizer's arguments under both standards of review. Kizer contends that either standard would yield the same result because "undisputed evidence" establishes MLAW's DTPA violations as a matter of law. But our review of the record shows that there was, at the very least, some evidence supporting the jury's finding that MLAW did not violate the DTPA.

5

"[I]f some evidence supports the verdict then the contrary evidence was not 'undisputed.'" *Keller*, 2005 Tex. LEXIS 436, at *26. Furthermore, the evidence that MLAW did violate the DTPA was not conclusive. Weighing all the evidence, the jury's verdict that MLAW did not violate DTPA was not against the great weight and preponderance of the evidence, did not shock the conscience, and was not manifestly wrong or unjust. *See Ortiz*, 917 S.W.2d at 772.

Kizer contends that MLAW represented that its services had characteristics, benefits or qualities that they did not have, and that this misrepresentation establishes MLAW's violation of the DTPA as a matter of law. While it may be correct that *if* this fact were uncontroverted, it would establish a violation of the DTPA as a matter of law, here the evidence of the misrepresentation was not undisputed.

To prevail on his legal sufficiency challenge, Kizer must prove both that no evidence supports the verdict and that the opposite was proved as a matter of law. *Keller*, 2005 Tex. LEXIS 436, at *24. While conclusive evidence may be disputed, evidence contrary to a verdict cannot be conclusive if there is some evidence to support the jury's finding. *Id*. at *30; *Canchola,* 121 S.W.3d at 739. Therefore we must ask whether there is any evidence to support the jury's finding.

Kizer testified that he had a conversation with MLAW engineers Dean Read and John Maggio in which they recommended the elevated hollow-core slab foundation and stated that they had successfully installed it at the Neidig house:

Q. Can you try to draw a picture for the jury of what they explained to you about the slab?

A. . . . They said, "We have got some alternatives."

6

Q. Who were you meeting with? Do you recall?

A. I'm sure it was Maggio, and Dean Read and I had met before, too. So I'm sure it was probably Dean Read and Maggio.

. . . .

Q. They say we have an alternative. What alternative did they explain to you?

A. They told me they had done a foundation on a house within three or four miles from me, or, you know, a short distance from me, three, to five, six miles; something like that. They even pointed to the house, told me which house it was.

Q. Was it Mr. Neidig's house?

A. It was Mr. Neidig['s] . . . .

MLAW engineer Dean Read testified that he never represented that MLAW installed the foundation at the Neidig house. Kirby Meyer, founder of MLAW and a builder and engineer for over 40 years, testified that he had "inquired diligently with everyone" at MLAW and found that no one told Kizer that MLAW had designed or constructed the foundation of the Neidig house. Meyer testified:

Q. If Mr. Kizer testifies that he was told that you-all had done another suspended foundation—suspended slab foundation with planks within three miles of his house; in other words, within the same kind of soil area, would that be true?

A. I never told him that. I've inquired diligently from everybody in the company that could have told him that, except John Maggio and nobody recalled that statement.

Maggio did not testify at trial. While Kizer's testimony is at odds with Read's and Meyer's testimony that they had made no such claims, it is not conclusive or undisputed. The jury

7

was free to credit Read's and Meyer's testimony over Kizer's, because the jury is the sole judge of the facts, the witnesses' credibility, and the weight given their testimony. *Keller*, 2005 Tex. LEXIS 436, at *66; *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 134 (Tex. 2000). There is evidence supporting the jury's finding that MLAW never told Kizer that MLAW designed the foundation of the Neidig house. The jury's decision to reject Kizer's testimony is not so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Similarly, Kizer's legal sufficiency challenge on his false-representation claim fails, because there was evidence presented at trial supporting the jury's finding; thus, any evidence contrary to the verdict was not conclusive.

Kizer claims that under *Dixon v. Brooks* the deference afforded to the jury does not render its findings unassailable. 604 S.W.2d 330 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). But the fact that the jury's findings are not unassailable does not mean that *any* contrary evidence is conclusive as a matter of law. When there is conflicting testimony, the demeanor and credibility of the witnesses must be assessed; this determination is the sole province of the jury. *First City Bank-Farmers Branch v. Guex*, 659 S.W.2d 734, 739 (Tex. App.—Dallas 1983), *aff'd*, 677 S.W.2d 25 (Tex. 1984); *see also Keller*, 2005 Tex. LEXIS 436, at *33; *Golden Eagle*, 166 S.W.3d at 761.

Kizer next claims that MLAW committed an "unconscionable action" as a matter of law. The DTPA defines an "unconscionable action" as "an act or a practice which, to a consumer's

8

detriment, takes advantage of the lack of knowledge, ability, skill, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5). But this claim hinges on Kizer's assertion that MLAW made the representation about the Neidig house to take advantage of his lack of experience. The jury was free to reject Kizer's testimony that such a misrepresentation occurred.

Moreover, even if MLAW made the statement Kizer attributes to it, the evidence is not conclusive that Kizer's lack of experience or knowledge was so great that MLAW would have been able to take advantage of him. Kizer testified that he began working as a carpenter in the fifth grade, and that together with his father and grandfather, he had "built a lot of Lubbock." In addition, Nesby testified that after the bankruptcy of the original builders, Kizer acted as his own general contractor. Nesby further testified that it was not MLAW that recommended the hollow-core slab foundation, but either Nesby or another one of the builders. Additionally, Meyer testified that although MLAW's engineers had advised Kizer that he would need a capping stone if he wanted to install tile, Kizer unilaterally decided to forgo the capping stone in favor of carpet for economic reasons. The evidence was sufficient for a reasonable jury to conclude that MLAW did not take advantage of Kizer's inexperience, but that Kizer relied on his own expertise when he decided to lay tile directly on top of the concrete planks. Thus, there was evidence supporting the jury's verdict, and the jury's finding that MLAW did not commit an unconscionable act is not against the great weight and preponderance of the evidence.

Kizer cites *Oxford Finance Co. v. Velez* for the proposition that a seller's actions can be "unconscionable as a matter of law" if it accepts payments and gives "nothing in return." 807

9

S.W.2d 460, 466 (Tex. App.—Austin 1991, writ denied). In *Oxford*, Velez financed some home improvements with a loan from Oxford secured by a lien on his house. *Id*. at 461–62. When Velez discovered the improvements were faulty, he ceased payment on the loan. *Id*. Oxford foreclosed on the property and sold the house to Mid-Tex. *Id*. Oxford had accepted both the loan payments from Velez and the foreclosure monies from Mid-Tex when Velez filed suit. *Id*. Finding that the contractor violated the DTPA, the jury voided the lien and the foreclosure; the trial court entered judgment on the jury's verdict. *Id*. This Court upheld the jury's verdict and ordered Oxford to return the foreclosure monies to Mid-Tex because Oxford would otherwise receive almost $15,000 from Mid-Tex, despite giving Mid-Tex "nothing in return." *Id*. at 466. The unconscionable act in *Oxford* was not the underlying DTPA violation, but Oxford's attempt to retain Mid-Tex's purchase money after the foreclosure sale was voided. *Id*.

Similarly, Kizer claims that he received "less than nothing" in return for his reliance on MLAW's misrepresentations. But Kizer did receive something from MLAW—a fully functional foundation, arguably preferable to the conventional slab-on-grade that would otherwise have been installed.

Kizer also contends that MLAW's actions were a "producing cause of his economic damages." Under the legal sufficiency standard, the first question is whether there was any evidence supporting the verdict that MLAW was not a producing cause of Kizer's damages. Kizer concedes on appeal that it was the tile installer's responsibility, not MLAW's, to recommend the capping slab. If MLAW did not have any responsibility to inform Kizer of the necessity of placing a capping slab

before beginning any tile installation,[2] then its failure to recommend the capping slab cannot be a producing cause of his damages. Kizer claims that MLAW should have noted "capping slab required" or "carpet only" on his house plans. Because there was evidence that MLAW did inform Kizer of the need for a capping slab as a prerequisite to tile installation, Kizer cannot claim that there is "no evidence" to support the jury's verdict that MLAW was not a producing cause of his damages. The evidence that Kizer decided to dispense with the capping slab for economic reasons, despite warnings from MLAW, supports the jury's finding that Kizer's negligence, not MLAW's, caused the occurrence in question. Thus, Kizer cannot prevail on his legal sufficiency challenge.

After weighing all the evidence of causation, Kizer's testimony that he was misinformed by MLAW cannot overcome his admission that it was not MLAW's responsibility to recommend a capping slab. The jury's verdict does not shock the conscience and is not clearly and manifestly wrong and unjust. *Golden Eagle*, 116 S.W.3d at 761.

Kizer misapplies the legal and factual sufficiency standards of review. He claims that the existence of *some* evidence contrary to the jury's verdict (his own testimony) compels us to treat that evidence as "undisputed," and therefore to find violations of the DTPA as a matter of law. But there is conflicting evidence on his DTPA claims, and Kizer's factual sufficiency argument does not explain why we should credit his testimony over witnesses for MLAW. A review for legal sufficiency is more deferential to a jury's verdict than a review for factual sufficiency, because the court conducting a factual sufficiency review considers all the evidence, both in favor of and contrary

---

[2] The record shows that MLAW informed Kizer that if he wanted to install tile or any other floor finishing (except stained concrete or carpet over heavy padding) a capping slab would be necessary to prevent damage to the flooring. MLAW understood that Kizer was going to use carpet.

11

to the jury's findings.  But even a factual sufficiency review defers to a jury's verdict unless it is clearly and manifestly unjust.  We overrule Kizer's sole point of error.

## CONCLUSION

Having found that the record is legally and factually sufficient to support the jury's verdict, we affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   August 25, 2005